Jack ROTHENBERG and Shirley Rothenberg, Plaintiffs-Appellees,

v.

SECURITY MANAGEMENT CO., INC., et al., Defendants-Appellants.

No. 78–2631.

United States Court of Appeals, Fifth Circuit.

May 29, 1980.

---

J. Michael Lamberth, J. Timothy White, Atlanta, Ga., for defendants-appellants.

Herbert S. Waldman, Robert J. Hipple, Atlanta, Ga., for plaintiffs-appellees.

Before GOLDBERG, CHARLES CLARK and THOMAS A. CLARK, Circuit Judges.

PER CURIAM:

In affirming the instant appeal, we write to clarify two points, one procedural and one substantive.

**1. Rule 54(b) Certification.**

■ Davis and Security Management Co., Inc., urge the following as the law of this circuit: "In entering a rule 54(b) certification [Fed.R.Civ.P. 54(b)], a district court should include a statement explaining its reasoning for determining [that] there is no just reason for delay." In support of this proposition, they cite *Huckeby v. Frozen Food Express*, 555 F.2d 542, 550 (5th Cir. 1977), and *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 274–275 (2d Cir. 1968). Neither authority supports this assertion. In the disposition portion of *Huckeby*, this circuit declined to review the dismissal of a would-be intervenor's complaint in a Title VII action but pointed out that on remand the district court could be asked to determine whether rule 54(b) was applicable. Our mandate stated, "In the event that the district court decides to certify its order for appeal, it should include a brief statement explaining why there is no just reason for delay. *Gumer v. Shearson, Hammill & Co., Inc.*, 516 F.2d 283, 286 (2d Cir. 1974); *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d [360] at 364 [3d Cir.]." 555 F.2d at 550. Thus, in a case already subjected to extensive review, we found it appropriate in our mandate to require the inclusion of a brief statement of reasons if the district court on remand exercised its discretionary power to proceed under rule 54(b). We did not go as far as the Second and Third Circuits in the cases cited above as to "suggest" to district courts that they make a brief, reasoned statement in support of their determination in all rule 54(b) certifications. See *Gumer v. Shearson, Hammill & Co., Inc.*, 516 F.2d at 286. Nor did we exercise our supervisory power to include *Gumer's* practice "as a requirement for all rule 54(b) certifications." *Allis-Chalmers Corp. v. Philadelphia Electric Co.*, 521 F.2d at 364.

Rule 54(b) contains no specific requirement that a district court include a statement explaining its reasoning for applying the rule. *Huckeby* did not intend to supplement the rule as a matter of general practice. The inclusion of such a statement is left to the discretion of the district court and is not imposed as a requirement in all cases. Thus, the district court was not in error in making the rule 54(b) certification without such an explanatory statement. However, when the case is of such a nature that the reasons for the 54(b) certification are unclear, it may be necessary for adequate appellate review to require that the district court's reasons be stated. What is said here is intended to encourage, not inhibit, such helpful explanations in any future cases, although we hold only that it is not a required procedure in this circuit at this time.

2. Interpretation of the Guaranty.

■ Davis and Security Management Co., Inc., complain that the rule 54(b) certification in the instant case prevented the district court from knowing that the Georgia Court of Appeals would reach a contrary result in a case styled *Pisano v. Security Management Co., Inc.*, 148 Ga.App. 567, 251 S.E.2d 798 (1978). The chronology shows that the district court below granted plaintiff's motion for partial summary judgment on January 25, 1978, and denied a motion for reconsideration on April 18, 1978. The State Court of Fulton County entered its order and judgment in Civil Action No. 621029, styled *Pisano, et al. v. Davis and Security Management Co., Inc.*, on May 12, 1978. The rule 54(b) certification in the instant case was made on June 30, 1978, after the district court had been advised that the Georgia decision in *Pisano* was on appeal. The Georgia Court of Appeals rendered its decision on November 14, 1978, and denied rehearing on December 20, 1978. The Supreme Court of Georgia denied certiorari on February 7, 1979.

*Pisano* would have substantive significance only if the Georgia court had authoritatively interpreted the legal meaning of the guaranty agreement on which the district court depended. We determine that it did not. Thus, there was no conflict between the decision of the Georgia Court of Appeals and the district court.

The controversy centers upon whether the Georgia adjudication interpreted the so-called B guaranty or limited its construction to the A guaranty only. The original complaint in *Pisano* was based upon the A guaranty only. Three days before the entry of the decision of the state court of Fulton County, the complaint was amended also to exhibit the B guaranty. The order and judgment of the Fulton County court was placed on three alternative grounds. The first was that plaintiffs acknowledged that neither guaranty was known to them at the time they purchased their stock. The court concluded initially that the lack of reliance meant that plaintiffs could not recover judgment on either document. The second alternative ground found no evidence in the record entitling plaintiffs to proceed on the B guaranty and that the A guaranty alone entitled the defendants to summary judgment based upon the construction of that instrument. The third alternative ground viewed the A and B guaranty together and concluded that the defendants were entitled to judgment as a matter of law.

The language of the opinion of the Georgia Court of Appeals discusses and analyzes a single guaranty instrument, one that obligated the guarantors in the event of nonpayment of a quarterly dividend to advance the corporation sufficient funds in the form of a loan to enable the company to pay the stipulated dividend. The Court of Appeals was describing the A guaranty only. The guaranty agreement relied upon by the district court in this case is obviously the B guaranty, which contained an obligation directly from the guarantors to the investors, including the Rothenbergs.[1] Thus, there is

---

1. Guaranty B provides as follows:

*GUARANTORS' OBLIGATION AS TO DIVIDENDS*

The Guarantors, jointly and severally, guarantee to the Investors of record, their successors and assigns (if said successors and assigns are allowed by the Articles of Incorporation of the Company) that the Company will distribute an annual cash dividend of .5625 Dollars per share, payable quarterly, for each outstanding share of Classes B, C and D cumulative stock held by the Investors of record. If, during any such quarter, the Company does not distribute such an amount, and such amount is due pursuant to the Articles of Incorporation of the Company, the Guarantors will, within thirty days after the end of such quarter, pay to the Investors of record an amount equivalent to the difference between the quarterly amount owed to said Investors and the dividends actually paid during that quarter. For the purpose of this paragraph the quarterly periods shall be computed from the beginning of the year following the incorporation of the Company.

Notwithstanding the foregoing, the Guarantors, jointly and severally, guarantee to the Investors of record, their successors and assigns (if said successors and assigns are allowed by the Articles of Incorporation of the Company) that the Company will, by December 31, 1972, have distributed as cash dividends an amount at least equal to .234375

no conflict between the ultimate resolution of the Georgia case and the decision in the court below.

All other points raised by the instant appeal are without merit.

AFFIRMED.

Dollars, a sum equivalent to 5/12 of the annual dividend, for each outstanding share of Classes B, C and D cumulative stock held by the Investors of record. If the Company does· not distribute such an amount, the Guarantors will, within thirty days after December 31, 1972, pay to the Investors of record an amount equivalent to the difference between .234375 per share, a sum equivalent to 5/12 of the annual dividend, and the dividends actually paid to the point of time.