971 F.2d 999
 23 Fed.R.Serv.3d 514, 15 Employee Benefits Cas. 2360
 John W. ANTHUIS, Jr., Appellant in 91-3670 and 91-3894,
v.
COLT INDUSTRIES OPERATING CORPORATION, Administrator of the
Colt Industries Operating Corporation Severance Plan and the
Colt Industries Operating Corporation Severance Plan,
Appellants in No. 91-3674.
Donald Dale GROSCOST, Appellant in 91-3675 and 91-3893,
v.
COLT INDUSTRIES OPERATING CORPORATION, individually, and as
successor to Crucible Inc., and Colt Industries Operating
Corporation, Administrator of the Colt Industries Operating
Corporation Key Executive Severance Plan, and the Colt
Industries Operating Corporation Key Executive Severance
Plan, Appellants in No. 91-3676.
 Nos. 91-3670, 91-3674--91-3676, 91-3893 and 91-3894.
 United States Court of Appeals,
Third Circuit.
 Argued May 19, 1992.
Decided July 27, 1992.
 
 Gregory K. Douglass, (argued), Whitmore, Verlihay & Douglass, Beaver Falls, Pa., for appellants, cross-appellees.
 William H. Powderley, III (argued), Paula E. Ganz, Joan C. Zangrilli, Jones, Day, Reavis & Pogue, Pittsburgh, Pa., for appellees, cross-appellants Colt Industries.
 Before: HUTCHINSON, COWEN, and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 Once again[1], we have been called upon to resolve issues raised by two agreements affecting employees of Colt Industries Operating Corporation ("CIOC"). One agreement is known as the Severance Plan. The other has been designated the Continuance Agreement.[2] Both the Severance Plan and the Continuance Agreement have been discussed in detail in Frank v. Colt Industries, Inc., 910 F.2d 90 (3d Cir.1990).
 
 
 2
 In the appeals before us, brought by appellants-cross-appellees John Anthuis and Donald Dale Groscost, we are obliged to dismiss Anthuis' appeal, because the order from which Anthuis took his appeal--the district court's order of August 29, 1991--was not an appealable order. For a similar reason, we are obliged to dismiss CIOC's cross-appeal which was taken from an order of the district court dated October 1, 1991.
 
 
 3
 Groscost and CIOC's appeals initially raised jurisdictional problems. We have reached the merits of the Groscost appeals, however, and although we do not entirely agree with the analysis of the district court, we affirm the district court's judgment in so far as it awards severance pay and prejudgment interest to Groscost. We will vacate the district court's ruling which denied Groscost's motion for attorneys' fees to be assessed against CIOC.
 
 I.
 
 4
 Anthuis and Groscost each filed an Amended Complaint against CIOC in the United States District Court for the Western District of Pennsylvania, after their respective complaints filed in the Pennsylvania Court of Common Pleas had been removed.
 
 
 5
 Both Anthuis and Groscost moved for partial summary judgment with respect to severance pay only. CIOC moved for summary judgment as to all counts, i.e., continuance salary payments and severance payments. On July 19, 1991, the district court, pursuant to its opinion rendered on that date, entered orders which denied CIOC's summary judgment motions, and which granted Anthuis severance pay of $19,125.00 and prejudgment interest of $16,738.44, and denied Anthuis' motion for attorneys' fees. Anthuis' continuance salary count was not adjudicated. On the same date, the district court entered an order which granted Groscost's severance pay of $15,245.00 and prejudgment interest of $13,570.78. The district court also denied Groscost's claim against CIOC for attorneys' fees. Groscost's continuance salary count was not adjudicated.
 
 
 6
 Thereafter, on August 29, 1991, the district court certified for interlocutory appeal its grant of severance pay to Anthuis (Count I of Anthuis' complaint), pursuant to 28 U.S.C. § 1292(b), and on October 1, 1991, certified the same Count as a final judgment under Fed.R.Civ.P. 54(b).
 
 
 7
 On September 30, 1991, Anthuis appealed at 91-3670 from the district court's order of August 29, 1991 (the district court's order purporting to certify the order of July 19, 1991 pursuant to 28 U.S.C. § 1292(b)).
 
 
 8
 On October 3, 1991, CIOC cross-appealed in the Anthuis proceeding at 91-3674 from the district court's order of October 1, 1991 (the district court's order purporting to certify the July 19, 1991 order pursuant to Fed.R.Civ.P. 54(b)).
 
 
 9
 After the district court had entered its order respecting Groscost's claims on July 19, 1991, Groscost and CIOC entered into a Stipulation under Fed.R.Civ.P. 41(a), which dismissed Groscost's claim for continuance salary payments (Count II of Groscost's complaint) and which limited the amount of Groscost's severance pay claim (Count I) to $15,245.00. The Stipulation also provided that the voluntary dismissal with respect to Groscost's severance count did not affect Groscost's claim for interest, costs and attorneys' fees, but only limited the amount of his severance benefit claim to $15,245.00.
 
 
 10
 On September 30, 1991, Groscost appealed the district court's decision denying him attorneys' fees. His appeal at 91-3675 was taken from the district court's order of August 29, 1991, which had approved the Stipulation which Groscost and CIOC had signed.
 
 
 11
 On October 3, 1991, CIOC cross-appealed in the Groscost proceeding the district court's order awarding Groscost severance pay and prejudgment interest. CIOC's cross-appeal at 91-3676 was also taken from the district court's order approving the August 29, 1991 Stipulation.II.
 
 1. District Court Opinion
 
 12
 The district court in its two opinions dated July 19, 1991, one opinion in Anthuis, the other in Groscost, held among other things that CIOC had not waived its contention that Anthuis and Groscost had failed to meet the conditions precedent to eligibility for participation under CIOC's Severance Plan. In Frank v. Colt Industries, Inc., 910 F.2d 90 (3d Cir.1990), this Court held that because CIOC had failed to raise its discretionary defense in the Frank case, CIOC had waived that issue. In the present actions brought by Anthuis and Groscost, CIOC had raised the discretionary argument in the district court, and the district court, as stated, held that the issue of discretionary approvals by CIOC officials was ripe for a merits decision.
 
 
 13
 The district court held that its reading of our decision in Frank required CIOC to pay severance benefits because the Continuance Agreements could not be construed to reduce or eliminate severance benefits under the Severance Plan. The district court went on to hold that the reservation of a broad discretion in an employer's Plan was in any event invalid and would cause a Plan with such a provision to violate ERISA. Hence, the district court entered summary judgment in favor of Anthuis for $19,125.00 in severance benefits and $16,738.44 in prejudgment interest. It entered summary judgment in favor of Groscost for $15,245.00 in severance benefits and $13,570.78 in prejudgment interest.
 
 
 14
 However, the district court then denied Anthuis and Groscost attorneys' fees which they sought pursuant to 29 U.S.C. § 1132(g)(1). It did so on the grounds that CIOC had not acted in bad faith and that its position was not meritless. The appeals to which we have referred earlier were then filed by all parties.
 
 
 15
 We have plenary review over the jurisdictional issues in both Anthuis and Groscost's appeals as well as the issues in Groscost concerning severance pay. Frank, 910 F.2d at 92. Our review of Groscost's prejudgment interest award is for abuse of discretion, Schake v. CIOC, 960 F.2d 1187, 1192 (3d Cir.1992); Feather v. United Mine Workers of America, 711 F.2d 530, 540 (3d Cir.1983), as is the denial of Groscost's motion for attorneys' fees. Schake, 960 F.2d at 1190.
 
 2. Anthuis' Appeal
 
 16
 Anthuis' Amended Complaint contained two counts. In Count I, Anthuis sought severance benefits under CIOC's Severance Plan. In Count II, Anthuis sought payment of additional salaries under a separate agreement--the Continuance Agreement--that he had made with Crucible Inc., the predecessor to CIOC.
 
 
 17
 Anthuis filed a motion for partial summary judgment limited to Count I (severance pay). CIOC filed a cross motion for summary judgment on both counts. On July 19, 1991, the district court granted Anthuis' motion for partial summary judgment on Count I, awarding Anthuis a severance benefit of $19,125.00 and prejudgment interest of $16,738.44, but denied Anthuis attorneys' fees and costs. The district court also denied CIOC's cross motion for summary judgment on both counts. The district court did not decide the second count in Anthuis' complaint. Thus, the July 19, 1991 order of the district court was not a final order from which appeal could be taken.
 
 
 18
 On August 21, 1991, both Anthuis and CIOC jointly moved "To Bifurcate Count I from Count II of Plaintiff's Amended Complaint and, Pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, to Enter Final Judgment on Count I, or alternatively, to Certify the Issuance of Summary Judgment as to Count I for Immediate Appeal pursuant to 28 U.S.C. § 1292(b)." An order signed by the district court on August 29, 1991, certified its July 19, 1991 order for immediate interlocutory appeal under 28 U.S.C. § 1292(b). The district court's order did not specify a controlling question of law as to which there was a substantial ground for a difference of opinion, although the order did state without explanation that an immediate appeal would materially advance the ultimate termination of the litigation. Both of these statements are required by the statute and by our own Local Rule 23, which also provides that
 
 
 19
 the controlling question of law presented for review shall be concisely stated in one sentence, if possible, expressed in the terms and circumstances of the case, but without unnecessary detail. The expression will be deemed to include every subsidiary question fairly comprised therein.
 
 
 20
 Moreover, neither Anthuis nor CIOC complied with Federal Rule of Appellate Procedure 5(a) which requires that a petition for permission to appeal be filed with this court within ten days after entry of 28 U.S.C. § 1292(b) certification by the district court. Thus, not having received this court's certification permitting an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), the Notice of Appeal filed by Anthuis on September 30, 1991, was not effective and jurisdiction did not vest in this court.
 
 
 21
 The record does not reveal any appeal taken by Anthuis from the district court's order of October 1, 1991, which purported to certify the July 19, 1991 order under Fed.R.Civ.P. 54(b). Even if Anthuis had sought to appeal this latter certification, the district court's failure to furnish reasons for its certification under Rule 54(b), as we explain below, would have rendered such an appeal ineffective.
 
 3. CIOC's Cross-Appeal
 
 22
 On October 1, 1991, the district court also signed an order entering judgment on Count I of Anthuis' Complaint, pursuant to Rule 54(b). The district court stated that "since there is no just reason for delay, final judgment be and hereby is entered pursuant to Rule 54(b) of the Federal Rules of Civil Procedure." (A 308-09). Fed.R.Civ.P. 54(b) does permit "entry of a final judgment as to one or more but fewer than all the claims or parties ... upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."[3]
 
 
 23
 The district court, in entering its order, gave no reasons to support its exercise of discretion. By failing to do so, the district court failed to comply with this court's requirements set forth in Allis-Chalmers Corp. v. Philadelphia Electric Co., 521 F.2d 360, 364 (3d Cir.1975) that,
 
 
 24
 A proper exercise of discretion under Rule 54(b) requires the district court to do more than just recite the 54(b) formula of "no just reason for delay." The court should clearly articulate the reasons and factors underlying its decision to grant 54(b) certification. "... It is essential ... that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law ..." Protective Committee v. Anderson, 390 U.S. 414, 434, 88 S.Ct. 1157, 1168, 20 L.Ed.2d 1 (1968).
 
 
 25
 Allis-Chalmers also announced the principles which guide a district court's decision in issuing a Rule 54(b) certification:
 
 
 26
 (1) the burden is on the party seeking final certification to convince the district court that the case is the "infrequent harsh case" meriting a favorable exercise of discretion; (2) the district court must balance the competing factors present in the case to determine if it is in the interest of sound judicial administration and policy to certify the judgment as final; (3) the district court must marshall and articulate the factors upon which it relied in granting certification so that prompt and effective review can be facilitated.
 
 
 27
 521 F.2d at 365.
 
 
 28
 By placing the burden on the parties seeking final certification, we recognize that district court judges must necessarily depend upon counsel to assist them by identifying the factors, considerations and reasons for the entry of a final judgment on less than all issues. The ultimate responsibility falls, of course, on the district court, but we would be unrealistic if we did not recognize that counsel must shoulder the burden of identifying the particular factors, considerations and reasons so that the district court may, in its discretion, properly evaluate the Rule 54(b) application.
 
 
 29
 When "faced with an appeal from a Rule 54(b) certification of finality, we must 'scrutinize the district court's evaluation of such factors as the interrelationship of the claims so as to prevent piecemeal appeals in cases which should be reviewed only as single units.' " Cemar, Inc. v. Nissan Motor Corp. in America, 897 F.2d 120 (3d Cir.1990), quoting Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980).
 
 
 30
 Here, as in Allis-Chalmers, and Cemar, the district court did not explain its analysis nor did it explain the basis for its statement that there was no just reason for delay. Nor did the district court assure us, by a statement of its reasons, that this was the "infrequent harsh case" in which final certification should be granted. In particular, we note that even after the entry of the October 1, 1991 order, and after we had requested supplemental briefing from counsel addressed to the issue of jurisdiction, neither Anthuis' counsel not CIOC's counsel made reference to the requirements of Allis-Chalmers. Indeed, that authority was not even cited in the primary briefs, let alone the supplemental briefings of the parties.[4]
 
 
 31
 Because we lack a competent Rule 54(b) certification, the district court's order of October 1, 1991 lacks finality. We are, therefore, obliged to dismiss CIOC's cross-appeal.
 
 4. Groscost's Appeal
 
 32
 Partial summary judgment was granted in Groscost's favor on July 19, 1991 on Count I of Groscost's Complaint. Groscost was awarded a severance benefit of $15,245.00, and $13,570.78 in prejudgment interest. The district court did not rule on Groscost's Count II (continuance payments). Thus, at that point, the July 19, 1991 order was not appealable.
 
 
 33
 Thereafter, the district court on August 29, 1991, approved a Stipulation for Voluntary Dismissal of both counts of Groscost's complaint and, by its order, limited Groscost's severance benefit to no more than $15,245.00. It further provided that the parties' voluntary dismissal of Count I, the severance count, would not affect Groscost's claim for interest, costs and attorneys' fees. Groscost filed a Notice of Appeal at 91-3675 on September 30, 1991. CIOC filed its cross-appeal at 91-3676 on October 3, 1991.
 
 
 34
 On appeal, Groscost argues that he was entitled to attorneys' fees because CIOC had breached its fiduciary duty in attempting to modify its Severance Plan without notice to employees. CIOC, on the other hand, appeals the severance award of $15,245.00 made to Groscost and the prejudgment interest award of $13,570.78.
 
 
 35
 Our initial jurisdictional reaction to the order approving the August 29, 1991 Stipulation was that it appeared to leave open not only costs and attorneys' fees, but also prejudgment interest. Under Osterneck v. Ernst & Whinney, 489 U.S. 169, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989), prejudgment interest is a part of the merits determination. See also Schake, 960 F.2d at 1192. After receiving supplemental letter briefs which we requested, and after oral argument, we are satisfied that the district court's order approving the August 29, 1991 Stipulation, when read in conjunction with its earlier rulings, constitutes an appealable order which vests us with appellate jurisdiction over Groscost's and CIOC's appeals.
 
 
 36
 We therefore turn to the merits of these appeals. We hold that on the record of these proceedings that the district court did not err in ruling that Groscost is entitled to a Severance Benefit of $15,245.00 and did not abuse its discretion in ordering prejudgment interest of $13,570.78. We hold, however, that because the district court failed to articulate its consideration of all five factors required by Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir.1983), the issue of attorneys' fees must be returned to the district court.
 
 III.
 1.
 
 37
 The facts out of which this litigation arises have been considered by us on numerous occasions. We will not repeat in detail all of those facts, but will just briefly summarize those matters relevant to our disposition here.
 
 
 38
 In 1982, CIOC decided to close or sell its plant in Midland, Pennsylvania. Groscost was an employee of CIOC. CIOC established a Key Executive Severance Plan for its key personnel.[5] When Crucible decided to close operations at Midland, it provided "Continuance Agreements" to give those employees who chose to continue working at CIOC, incentives to remain at the plant for fixed periods of time, both to ensure an orderly winding down of operations, and to keep a skilled workforce on hand to make the plant more attractive to prospective purchasers. The Continuance Agreements provided that
 
 
 39
 should you voluntarily continue full employment at [CIOC] for the Agreement Period, you shall receive your current compensation and benefits and upon [varying separation date] should separation be necessary, you shall receive an accrued continuance bonus equal to a month's salary for each month of continuous employment up to [same separation date].
 
 
 40
 (A 16). The Agreements generally covered periods of five, seven or ten months duration. Thereafter, CIOC denied severance benefits under its Severance Plan to Groscost and other employees who had signed Continuance Agreements on the grounds that they were precluded from receiving severance benefits once they had bound themselves under a Continuance Agreement.
 
 
 41
 We had held in Frank v. Colt Industries, 910 F.2d 90, 96 (3d Cir.1990), that "the Continuance Bonuses were not alternative benefits, but rather were distinct agreements that had no effect on the plaintiffs' rights to severance pay under the Plan." In so holding, however, we did not address on the merits the argument that CIOC makes here. CIOC argues here that in order for an employee to receive a severance benefit, the Plan provides that the company, through its designated officers, had discretion to consider the unique circumstances of each employment termination, in order to determine whether severance pay should be granted in each instance. Here, however, the district court, as we have earlier stated, concluded that CIOC, by raising this argument before the district court, had not waived the "discretion" argument in Groscost's case. We agree, and thus proceed to address this issue.
 
 
 42
 Based on its discretion argument, CIOC urges us to deny severance benefits to Groscost, in light of our opinions in Hamilton v. Air Jamaica, Ltd, 945 F.2d 74 (3d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1479, 117 L.Ed.2d 622 (1992) and Nazay v. Miller, 949 F.2d 1323 (3d Cir.1991). CIOC argues that, under the terms of the Plan itself, Groscost had failed to meet all the conditions precedent to eligibility for severance benefits, principally by failing to secure the discretionary approvals described in the Plan.
 
 
 43
 The Severance Plan contains a broad reservation of discretion to withhold payment of benefits. The Plan provided that "[u]nder circumstances and conditions as defined by the Company, subject employees whose employment is terminated for specified reasons may become eligible for severance allowance." (A 220). The Plan also provides that "[a] severance allowance is payable only when prior approval is obtained from the Division President, Group Vice President and the corporate Vice President of Personnel." Id. Finally, the Plan further states,
 
 
 44
 The procedures and allowances contained herein are not to be automatically applied to any employment termination, and the application of these procedures and allowances to an incident of employment termination shall not serve as a precedent for any subsequent employment determination. Each incident of employment termination will be evaluated as an isolated occurrence and the Company shall determine in each instance the applicability of these allowances.
 
 
 45
 (A 220-221) (emphasis added).
 
 
 46
 In Frank, CIOC argued that the benefits under the two plans were mutually exclusive, that the language in the Continuance Agreements--"you shall receive your current compensation and benefits" (A 16)--did not refer to severance pay, and that workers who opted to collect benefits under the Continuance Agreements had thereby relinquished their rights to severance benefits.
 
 
 47
 The crux of CIOC's argument under its "discretion" analysis is that CIOC did not intend, and the terms of the Severance Plan did not require, mandatory severance benefit payments. To the contrary, CIOC claims that it had complete discretion to select which individuals would participate in the Severance Plan and receive severance benefits. That broad discretion, according to CIOC, was vested in CIOC's Division President, Group Vice President and corporate Vice President of Personnel.
 
 
 48
 CIOC describes its process of individual evaluation of eligibility for severance benefits under the Plan as follows:
 
 
 49
 The terms of the Severance Plan reflect Crucible's intent that the circumstances of each employee's termination were to be evaluated on an individual basis. The eligibility for and payment of any benefit from the Severance Plan was conditioned upon approval of [the three officers]; thus, the prior approval was a pre-condition to becoming eligible to participate in the Severance Plan. Crucible intended, and the Severance Plan directed, that these persons were to determine, based on a consideration of the particular circumstances of each termination, whether participation in the Severance Plan was appropriate in a given instance.
 
 
 50
 (CIOC Brief at 19).
 
 
 51
 In urging us to reverse the district court's holding that Groscost is entitled to severance benefits, CIOC relies on our precedents which hold that an employer may exercise complete discretion over who may be eligible participants in severance benefits. In Hlinka v. Bethlehem Steel Corp., 863 F.2d 279, 283 (3d Cir.1988), we stated that "ERISA is not a direction to employers as to what benefits to grant their employees. Rather, ERISA is concerned with the administration of an established plan and its elements." Likewise, in Nazay, 949 F.2d at 1329, we recognized that "the clear emphasis of the statute is to ensure the proper execution of plans once established."
 
 
 52
 In Nazay, a certification for hospitalization required by the employer's health plan had not been obtained by the employee. A waiver had been sought, but was denied by the Administrator of the Plan. Nazay then brought an action claiming that ERISA had been violated, because he had been denied health benefits to which he was entitled under the Plan. The district court refused to enforce the certification requirement and held for Nazay. In reversing the district court and directing that summary judgment be entered in favor of the employer and the other appellants, we stated:In our view, BSC, as an employer, is free to develop an employee benefit plan as it wishes because the creation of a benefit plan is a corporate management decision unrestricted by ERISA's fiduciary duties. Therefore, the arbitrary and capricious standard which may attach to fiduciary decisions does not apply.
 
 
 53
 Id. at 1328.
 
 
 54
 In Hamilton v. Air Jamaica, 945 F.2d at 78-79, we also stated that "nothing in ERISA prevents Air Jamaica from providing its employees with benefits on a case by case basis--as long as that limitation is explicitly stated as part of the plan."
 
 
 55
 It is undisputed that Groscost never received the prior approval which CIOC contends is essential for an employee to obtain severance benefits. The district court in its alternative holding, concluded that the reservation of such broad discretion by CIOC was a violation of ERISA. In light of the earlier expressions of this court in Hlinka, Nazay, and Hamilton, to which we have just referred, we cannot agree. We hold that approvals such as are incorporated into CIOC's Severance Plan are not precluded by ERISA.
 
 
 56
 If this action came down to no more than a question of CIOC's approval as an employer, of an employee's severance benefit--an approval contingent upon the proper exercise of CIOC's discretion--and if Groscost's severance claim had been evaluated on an individualistic basis by the designated representatives of CIOC as provided in CIOC's Severance Plan, our resolution of the instant controversy would necessarily be controlled by Nazay, Hamilton, and similar cases. Thus, our holding, permitting employers to exercise discretion in their ERISA plans, has been presaged by our earlier decisions where we interpreted ERISA to permit employers to exercise complete and broad discretion.
 
 
 57
 If in this case, CIOC's discretion had been properly exercised, Groscost might well have been denied severance benefits. However, even though we have determined that CIOC's Severance Plan may reserve discretion in its officers to determine employee participation, the next question to which we must turn is whether the discretion practiced by CIOC in this case was properly exercised. The district court found that it was not. We agree.
 
 2.
 
 58
 The Continuance Agreement which Groscost signed provided, among other things: "[y]ou shall receive your current compensation and benefits." (A 16) This court has already addressed this provision in Frank, holding that the employees' interpretation that their severance benefits would be unaffected by any decision to enter into a Continuance Agreement was not only reasonable, but the only rational meaning to be accorded the quoted words.
 
 
 59
 Thus, Frank held that any reasonable employee would construe this clause to include benefits under CIOC's Severance Plan. Frank went on to state:
 
 
 60
 Accordingly, if the terms of the Severance Plan precluded payment of both a Continuance Bonus and severance pay, then we would have to sustain [CIOC's] position. But there was no such provision in the Severance Plan when the Continuance Agreements were signed. While the other benefits provision permits the creation of different benefits, it does not by its terms prohibit the creation of a benefit to be paid upon termination in addition to severance pay. Thus, it was entirely consistent with the Severance Plan for [CIOC] to create a new benefit that would not supplant the existing severance pay.
 
 
 61
 Frank, 910 F.2d at 97. Similarly, if the terms of the Continuance Agreement precluded payment of severance benefits or specifically excluded benefits under CIOC's Severance Plan, we would have to sustain CIOC's position. But just as there was no provision in the Severance Plan precluding continuance payments and severance pay, so too there is no provision in the Continuance Agreement precluding both continuance payments and severance benefits. Thus, there can be no room for difference between the Frank interpretation and ours.
 
 
 62
 Even though we have held that CIOC had broad approval rights and thus discretion under its Severance Plan, that discretion as it was required to be exercised under the Plan, was never exercised when Groscost was denied severance benefits. Rather than exercising its "prior approval" discretion on a case-by-case basis as required by the Severance Plan, CIOC automatically determined that employees who entered into a Continuance Agreement could receive no severance benefits. This was the only factor to which CIOC looked in deciding whether severance benefits should be paid. As CIOC put it:
 
 
 63
 "the record demonstrates that there was a reason why Appellants did not receive Severance Benefits: the Division President, Group Vice President and corporate Vice President of Personnel decided that Severance Benefits would be extended to salaried employees who did not receive a Continuance Bonus Benefit, and that employees who received a Continuance Bonus Benefit would not receive Severance Benefits."
 
 
 64
 (CIOC Brief at 22)
 
 
 65
 Thus, CIOC has conceded that the officers in whose discretion individual eligibility for severance payments lay, made their decision, not on a case-by-case evaluation, but by excluding all participants in the Continuance Agreements on the grounds that they had entered into Continuance Agreements.[6]
 
 
 66
 In sum, by holding that Groscost is entitled to severance benefits, we do not question that CIOC may provide for approval of benefits in its discretion. But CIOC may not import new conditions into its benefit Plan, without notice to those who are affected, and CIOC may not ignore nor dispense with discretionary case-by-case employee evaluations which were provided as part of the Severance Plan.[7] Having deliberately eschewed, and thus having waived, a "prior approval" severance pay evaluation for each employee, such as Groscost, who, after continuing to work under a Continuance Agreement, then left CIOC's employ, CIOC cannot now be heard to object to severance pay liability.[8] Hence, we hold that the district court did not err in granting summary judgment to Groscost and awarding Groscost the sum of $15,245.00 as provided in the August 29, 1991 Stipulation and Order.
 
 IV. Prejudgment Interest
 
 67
 On July 19, 1991, the district court had awarded $13,570.78 in prejudgment interest to Groscost. In the Groscost-CIOC Stipulation of August 29, 1991, which the district court approved, Groscost's claims for prejudgment interest and attorneys' fees were not affected. CIOC argues here that ERISA (29 U.S.C. § 1132(g)) does not provide for the payment of prejudgment interest except where employer contributions are delinquent[9], and calls our attention to 29 U.S.C. § 1132(g)(1) which refers to attorneys' fees and costs, but does not refer to payment of interest.
 
 
 68
 Groscost, on the other hand, contends that under ERISA, a civil action may be brought by a participant (Groscost) for "appropriate equitable relief" under 29 U.S.C. § 1132(g)(2)(E), which Groscost claims in this case should be construed to include prejudgment interest. Groscost argues that "if [CIOC] is now only required to pay the original principal amount of the claim, [CIOC] can practically pay this from the interest that the employer has earned on the employee's money over the last nine years." (Groscost Reply Brief at 16). Groscost also refers us to other ERISA cases in the Sixth[10] and Eighth[11] Circuits which have affirmed prejudgment interest awards.
 
 
 69
 While it is true that Congress did not mandate prejudgment interest payments for other than delinquent contributions, we have held generally that "[i]n the absence of an explicit congressional directive, the awarding of prejudgment interest under federal law is committed to the trial court's broad discretion." Ambromovage v. United Mine Workers, 726 F.2d 972, 981-82 (3d Cir.1984). Ambromovage cited Board of Commissioners of Jackson County, Kansas v. United States, 308 U.S. 343, 352, 60 S.Ct. 285, 289, 84 L.Ed. 313 (1939), in which the general federal rule was announced that prejudgment interest is to be "given in response to considerations of fairness [and] denied when its exaction would be inequitable."
 
 
 70
 Moreover, Groscost, in citing authority to us for the principle that prejudgment interest may be awarded in this ERISA context, could well have referred to our own decision in Schake v. Colt Industries, 960 F.2d 1187 (3d Cir.1992), a case involving the same benefits and employer as the instant proceeding. In Schake, while we did not directly address ourselves to the issue of whether prejudgment interest was permitted, we nevertheless acknowledged that prejudgment interest in an ERISA case involving the self-same CIOC Severance Plan was authorized. We stated "[i]t is undisputed that prejudgment interest typically is granted to make a plaintiff whole because the defendant may wrongfully benefit from the plaintiff's money." 960 F.2d at 1192 n. 4.
 
 
 71
 Schake, of course, dealt with the issue of not whether prejudgment interest should be allowed as such, but whether the district court retained jurisdiction in the Schake case to order prejudgment interest when the motion seeking interest, costs and attorneys' fees was filed long out of time. We held that the district court erred in granting prejudgment interest, costs, and attorneys' fees, only because it had no jurisdiction to do so, due to the time that had transpired after its final order had been entered.
 
 
 72
 The Schake court in its decision cited Stroh Container Co. v. Delphi Industries, Inc., 783 F.2d 743, 752 (8th Cir.), cert. denied, 476 U.S. 1141, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986), an Eighth Circuit case which discussed the considerations which should be undertaken when a district court exercises discretion in the award of prejudgment interest. Significantly, as we have noted above, the Eighth Circuit has specifically interpreted ERISA to provide for prejudgment interest where there had been a denial of pension benefits. See Short v. Central States Pension Fund, 729 F.2d 567 (8th Cir.1984) and supra note 9. Stroh Container stated:
 
 
 73
 As a general rule, prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of the money which was legally due. Awarding prejudgment interest is intended to serve at last two purposes: to compensate prevailing parties for the true costs of money damages incurred, and, where liability and the amount of damages are fairly certain, to promote settlement and deter attempts to benefit from the inherent delays of litigation. Thus prejudgment interest should ordinarily be granted unless exceptional or unusual circumstances exist making the award of interest inequitable.
 
 
 74
 Stroh Container, 783 F.2d at 750.
 
 
 75
 We regard Schake as providing authority for the principle from which we may not depart[12] that in the district court's discretion, prejudgment interest may be awarded for a denial of pension benefits. Even if Schake were to be construed otherwise, however, we would reach the same conclusion that the Sixth and Eighth Circuits have reached, and for which we believe Schake stands.
 
 
 76
 CIOC has also argued that if prejudgment interest were to be awarded, it could only be awarded from the time that Groscost had an immediate, unqualified entitlement to benefits and that interest could not be computed from the time Groscost's employment terminated, because Groscost had not received "prior approval" from CIOC's officers. We have held, however, that CIOC had not properly exercised its discretion in determining approval and thus eligibility for severance payments as required by its Severance Plan. See Part III.2 supra.
 
 
 77
 Hence, we reject CIOC's argument and hold that the district court properly measured Groscost's prejudgment interest from the date of his termination. In light of these considerations, we affirm the district court's exercise of its discretion in awarding prejudgment interest to Groscost in the sum of $13,570.78.
 
 V. Attorneys' Fees
 
 78
 29 U.S.C. § 1132(g)(1) provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party," but does not automatically mandate an award to a prevailing party. Monkelis v. Mobay Chemical, 827 F.2d 935, 937 (3d Cir.1987).
 
 
 79
 The district court denied Groscost's request for attorneys' fees in the Memorandum Opinion of July 19, 1991, with the following statement:
 
 
 80
 Plaintiff has requested attorney's fees which are available pursuant to our discretion under 29 USC § 1132(g)(1). We will deny that request. Colt has neither acted in bad faith, nor pressed a clearly meritless position. See Monkelis v. Mobay Chemical, 827 F2d 935, 937 (3d Cir 1987).
 
 
 81
 (A 226-27).
 
 
 82
 Monkelis, which held that the district court did not abuse its discretion in awarding attorneys' fees to Mobay Chemical, affirmed the district court's analysis made pursuant to Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir.1983). Ursic set out a five factor test for the award of attorneys' fees:
 
 
 83
 (1) the offending parties' culpability or bad faith;
 
 
 84
 (2) the ability of the offending parties to satisfy an award of attorneys' fees;
 
 
 85
 (3) the deterrent effect of an award of attorneys' fees against the offending parties;
 
 
 86
 (4) the benefit conferred on members of the pension plan as a whole; and
 
 
 87
 (5) the relative merits of the parties' position
 
 
 88
 Since Ursic announced the factors which a district court should consider in awarding fees under ERISA, we have consistently required a district court's discretion to be informed by at least these five factors. Indeed, the Ninth Circuit case of Hummell v. S.E. Rykoff & Co., 634 F.2d 446 (9th Cir.1980) from which Ursic's analysis stemmed, indicated that each of those factors, among others, was to be balanced and considered by the district court in determining claims for attorneys' fees under ERISA.
 
 
 89
 In Monkelis, which the district court cited, the five Ursic factors were once again recited and, as stated, the district court's analysis was reviewed by us and affirmed. In Groves v. Modified Retirement Plan, 803 F.2d 109 (3d Cir.1986), the district court considered each of the five Ursic factors and, after such consideration, found three of the factors dispositive and denied Groves the attorneys' fees which he sought. On review, although recognizing the deference which we accord to a district court's discretion, we nevertheless reversed the district court's order, holding that the district court's factor analysis of "benefit" and "bad faith" were flawed.
 
 
 90
 In our recent decision in Schake, 960 F.2d at 1193, we once again reversed the district court's award of attorneys' fees because in Schake the district court had "offered no explanation for its decision to assess attorney's fees and costs against appellant; the record is devoid of any standard, much less the analysis set forth in Ursic."
 
 We also said:
 
 91
 ... the district court failed to apply the five factor standard we adopted in Ursic, 719 F.2d 670, to be applied in considering whether to grant an application for attorney's fees and costs under ERISA section 502(g)(1). Although some courts permit a more flexible approach than our five-step analysis, courts agree that some rationale must be given to support an award under section 502(g)(1).
 
 
 92
 Id. at 1192.
 
 
 93
 Indeed, the Schake decision graphically emphasizes the shortcomings of the district court's treatment of the attorneys' fees issue in the present case. In Schake, the district court, without any analysis of the Ursic factors, granted attorneys' fees. Here, the district court, with only an abbreviated analysis, denied attorneys' fees, even though the same Plan, the same employer, and the same issue were involved here as were involved in Schake.
 
 
 94
 It would be pointless for us to cite to every decision of our court rendered since Ursic which did, or did not, award attorneys' fees based upon an Ursic factor-analysis. Suffice it to say, we regard our requirement that district courts consider and analyze these factors as a mandatory requirement. We do so in order that we may intelligently review the judgments reached by those courts, as
 
 
 95
 [i]t is essential ... that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boiler-plate approval phrased in appropriate language but unsupported by evaluation of the facts or analysis of the law.
 
 
 96
 Protective Committee v. Anderson, 390 U.S. 414, 434, 88 S.Ct. 1157, 1168, 20 L.Ed.2d 1 (1968).
 
 
 97
 We have been consistent in holding that meaningful appellate review of the exercise of discretion requires consideration of the basis on which the trial court acted, see e.g., Gurmankin v. Costanzo, 626 F.2d 1115, 1119-20 (3d Cir.1980), cert. denied, 450 U.S. 923, 101 S.Ct. 1375, 67 L.Ed.2d 352 (1981), and in holding that the mere listing of factors without further explanation and without balancing one factor against another is insufficient for meaningful appellate review. Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161 (3d Cir.1973).
 
 
 98
 Unfortunately, although the district court was aware of the factor-analysis required by Ursic, having cited to Monkelis, it did not implement that analysis by explanation or reasoning. Indeed, it concluded no more than that "[CIOC] has neither acted in bad faith nor pressed a clearly meritless position." (A 227).
 
 
 99
 By so stating, it is obvious that the district court considered factors one and five of the Ursic catechism, but did so without analysis or articulation of its reasons. Moreover, the district court's opinion is silent with respect to the other three Ursic factors (i.e. ability to satisfy an award, deterrent effect, and benefit conferred on members of the pension plan).
 
 
 100
 While having read the arguments of the parties and having studied the record, we could reach our own conclusions with respect to the merit of CIOC's position and, possibly, with respect to some, if not all, of the remaining factors, the function of analyzing and balancing these considerations is not ours to undertake. As Judge Weis wrote in Ursic, "it is the district court, and not this court, which possesses the authority to exercise fee setting discretion." Ursic, 719 F.2d at 674. Thus, we ought not to substitute our judgment for that of the district court.
 
 
 101
 However, because our review, in this case and in similar cases, cannot proceed without knowing the basis upon which the district court acted, we must require that, in each instance in which the district court exercises its fee-setting discretion, it must articulate its considerations, its analysis, its reasons and its conclusions touching on each of the five factors delineated in Ursic. It may, of course, consider additional factors, see Hummell v. S.E. Rykoff & Co., 634 F.2d 446 (9th Cir.1980), but at the least, it must furnish a reasoned basis for its ultimate determination, and that reasoned basis must be grounded in the policy factors enumerated in Ursic. This requirement of factor-analysis is not uncommon, for in various contexts, we have heretofore required a specification of factors, a reasoning calculus, and a weighing and balancing of interests, all of which are essential to inform our review of the district court's exercise of discretion.[13]
 
 
 102
 Here, as we have observed, we are hampered in our review function because the district court failed to enunciate the reasons for the conclusions which it reached in denying Groscost's attorneys' fees, and additionally has utterly failed to recognize, analyze, explain or enunciate conclusions concerning the other Ursic factors which it was required to consider. Inasmuch as we are capable of reviewing a district court's discretionary judgment only when we know the reasons for, and the basis of, those factors on which the district court relied when it exercised its discretion, we are unable to discharge our responsibility in this case because the record is insufficient for purposes of our review. We must, therefore, return this aspect of the proceeding to the district court.
 
 
 103
 In doing so, we express no opinion as to whether attorneys' fees should be awarded, or the amount of such award if granted. As we have stated, it is the district court which possesses the requisite authority to exercise this discretion.
 
 VI.
 
 104
 For the reasons stated, we will dismiss Anthuis' appeal at 91-3670 and CIOC's cross-appeal at 91-3674 for want of appellate jurisdiction. We will affirm the award of severance pay to Groscost in the amount of $15,245.00 and the award of prejudgment interest in the amount of $13,570.78. We will vacate so much of the district court's order of July 19, 1991 (as finalized in the order August 29, 1991) as denied Groscost's motion for attorneys' fees, and we will remand only this issue to the district court for further proceedings consistent with the foregoing opinion.
 
 
 105
 Costs shall be taxed against the cross-appellants CIOC.
 
 
 106
 ROBERT E. COWEN, Circuit Judge, concurring and dissenting.
 
 
 107
 I concur in the court's opinion insofar as it dismisses Anthuis' appeal and CIOC's cross-appeal, both of which were taken from non-appealable orders of the district court. However, I respectfully dissent from section III of the opinion which affirms on the merits the decision of the district court with respect to Groscost. I would reverse the district court's decision, and thus, I would not reach the issue of prejudgment interest and attorney's fees.
 
 
 108
 I believe the majority opinion has read far too much into this court's earlier decision in Frank v. Colt Industries, Inc., 910 F.2d 90 (3d Cir.1990), and neglected our subsequent decisions concerning employer discretion under ERISA. In Frank, this court examined the same benefit plan that is at issue in the case currently before us. There, we simply held that "the Continuance Bonuses were not alternative benefits, but rather were distinct agreements that had no effect on the plaintiffs' rights to severance pay under the Plan." Id. at 96 (emphasis in original). It is important to recognize that Frank did not require the payment of both severance and continuance benefits; all Frank held was that the payment of one benefit did not preclude the payment of the other benefit.
 
 
 109
 In Frank, CIOC first raised the discretion argument that is now before us. We noted that Colt's argument raised "important issues of first impression concerning the ability of an employer to reserve complete discretion over employee eligibility for benefits under an ERISA plan." Id. at 99 (emphasis in original). However, we did not address these admittedly important issues, since we held that Colt had waived them by raising them for the first time on appeal. Id. at 100.
 
 
 110
 This court has since allowed employers to reserve broad discretion in the payment of severance benefits "as long as that limitation is explicitly stated as part of the plan" and the reservation does not violate the policies underlying ERISA. Hamilton v. Air Jamaica, Ltd., 945 F.2d 74, 77-78 (3d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1479, 117 L.Ed.2d 622 (1992).[1] "Having concluded that ERISA permits an employer to reserve the right to make early retirement benefit determinations on an individual basis, nothing suggests we should treat severance pay differently." Id. at 78 (emphasis added). Hamilton provided a detailed explanation of how employer discretion can be reconciled with the goals of ERISA, and how discretion actually advances the interests of employees:
 
 
 111
 Employers are understandably more willing to provide employee benefits when they can reserve the right to decrease or eliminate those benefits. To the extent that employees have sufficient bargaining power to obtain guaranteed benefits, ERISA will enforce those rights and will ensure--through its disclosure requirements--that employees know what benefits they will receive. Therefore, allowing employer reservations of the right to make individual benefit determinations takes nothing away from employees who can command guaranteed benefits and will allow other employees to obtain benefits the employer would refuse to provide on a guaranteed basis.
 
 
 112
 Id. at 79. The "almost unbounded discretion" given to employers to determine benefits is qualified by "no more than the minimal obligation of good faith." Berger v. Edgewater Steel Co., 911 F.2d 911, 919 (3d Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991). Because Frank explicitly left open the issue of employer discretion later decided in Hamilton, the two decisions must be read together.
 
 
 113
 In this case, unlike in Frank, CIOC presented the discretion argument to the district court, and thus, there was no procedural waiver. The district court, however, held that "the reservation of such broad discretion in the employer is invalid."[2] App. at 224. Given Hamilton, this is surely no longer an accurate statement of the law. Thus, the majority has wisely chosen not to adopt the district court's analysis. Instead, the majority argues that the CIOC officers never exercised any discretion and decided eligibility for severance payments "not on a case-by-case evaluation, but by excluding all participants in the Continuance Agreements on the grounds that they had entered into Continuance Agreements." Maj. op. at 1008.
 
 
 114
 The majority cites nothing in the record to support its theory that CIOC failed to exercise or improperly exercised its discretion.[3] See Kotrosits v. GATX Corp. Non-Contributory Pension Plan for Salaried Employees, 970 F.2d 1165, 1173 (3d Cir.1992) ("[A]nyone urging that a court disregard that reservation [of discretion] has the burden of showing some reason to believe the exercise of discretion has been tainted."). Had there been such a smoking gun in the record, I might have agreed with the majority. However, the only support for the majority's theory is an excerpt from CIOC's brief to this court. See Maj. typescript at 1008 (quoting CIOC Brief at 22). This excerpt is far from dispositive. Indeed, this excerpt could support a different conclusion, since it indicates that "the Division President, Group Vice President and corporate Vice President of Personnel decided " not to award one type of benefit to employees who received the other type of benefit. The use of the word "decided" implies the exercise of some discretion by CIOC's officers.
 
 
 115
 The majority views the proper exercise of discretion as requiring a thoughtful, comprehensive, case-by-case evaluation of an employee's eligibility for benefits. However, this court has previously recognized that case-by-case decisionmaking can take many forms. See Hamilton, 945 F.2d at 79 n. 6 ("Hamilton cannot credibly claim that, in awarding him the same severance pay that it awarded all similarly situated employees, Air Jamaica acted in bad faith."); Berger, 911 F.2d at 919 (employer's "failure to give individual attention to the Employees' requests was without consequence"). The majority's opinion is problematic, since it does not elaborate on what constitutes sufficient case-by-case evaluation, and thus fails to give specific guidance to employers on how they should evaluate an employee's claim. Surely, the majority would not be satisfied with a mere perfunctory evaluation.
 
 
 116
 There is no evidence that CIOC failed to examine the individual merits of Groscost's claim before denying him severance benefits. Nor is there any evidence that greater individual attention to Groscost's claim would have affected CIOC's decision to deny him benefits. Whatever case-by-case evaluation was required by the severance plan was qualified by a provision stating that employees "may become eligible" for severance benefits "[u]nder circumstances and conditions as defined by the Company." App. at 220.
 
 
 117
 Lastly, I would point out that this court has given greater deference to an employer's decision to deny benefits when the employer is acting in its capacity as an employer rather than as an ERISA fiduciary. Berger, 911 F.2d at 918; see also Nazay v. Miller, 949 F.2d 1323, 1328 (3d Cir.1991) ("the creation of a benefit plan is a corporate management decision unrestricted by ERISA's fiduciary duties"); Fletcher v. Kroger Co., 942 F.2d 1137, 1139-40 (7th Cir.1991) (employer's decision to provide early retirement benefits to selected employees was permissible). "Business decisions can still be made for business reasons, notwithstanding their collateral effect on prospective, contingent employee benefits." Dzinglski v. Weirton Steel Corp., 875 F.2d 1075, 1079 (4th Cir.1989), cert. denied, 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989). Here, CIOC acted in its capacity as an employer in deciding not to award severance benefits, and thus, we should defer to CIOC's decision.
 
 
 118
 This litigation has gone on far too long. Nevertheless, I would reverse the district court's decision, since it was based on reasoning no longer valid in this circuit. Given the broad discretion enjoyed by employers after Hamilton, I cannot conclude that CIOC acted improperly in this case. At the very least, I would remand this case to the district court for a re-examination of CIOC's exercise of discretion in light of Hamilton.
 
 
 119
 For the foregoing reasons, I respectfully dissent.
 
 
 
 [1]
 See Schake v. CIOC, 960 F.2d 1187 (3d Cir.1992); Frank v. Colt Industries, Inc., 910 F.2d 90 (3d Cir.1990); Schake v. Colt Industries, Inc., 791 F.2d 920 (3d Cir.1986); Anthuis v. CIOC, 789 F.2d 207 (3d Cir.1986)
 
 
 [2]
 The parties have variously referred to the Continuance Agreement as the "Continuance Bonus Benefit," and the "Continuance Bonus Agreement."
 
 
 [3]
 Our familiarity with the issues and arguments made by the parties respecting both the Severance Plan and the Continuance Agreements, a familiarity obtained through extended exposure to this litigation, makes us question whether there could ever be a proper exercise of judicial discretion which would result in an "entry of a final judgment" certification under Fed.R.Civ.P. 54(b)
 
 
 [4]
 The requirement of a specification of factors and reasons to support granting a Rule 54(b) motion for certification is not confined to this court. At least six other Courts of Appeals have imposed the same requirement. See Pahlavi v. Palandjian, 744 F.2d 902 (1st Cir.1984); Arlinghaus v. Ritenour, 543 F.2d 461 (2d Cir.1976); Rothenberg v. Security Management Co., Inc., 617 F.2d 1149 (5th Cir.1980); Solomon v. Aetna Life Insurance Co., 782 F.2d 58 (6th Cir.1986); United States General, Inc. v. Albert, 792 F.2d 678 (7th Cir.1986); Hayden v. McDonald, 719 F.2d 266 (8th Cir.1983)
 
 
 [5]
 The Administrator of the Severance Plan has stated in his affidavit that the Key Executive Severance Plan, other than for the amount of benefits, is the same as the basic Severance Plan (A 121), and that the term "Severance Plan" as referred to by the parties in this litigation encompasses both plans
 
 
 [6]
 Unlike Berger v. Edgewater Steel Co., 911 F.2d 911 (3d Cir.1990), CIOC's blanket decision does have a "consequence." Id. at 919. CIOC's blanket decision based on an employee's participation in the Continuance Agreement as constituting a forfeiture of severance benefits cannot meet Berger's minimal standard of good faith
 
 
 [7]
 CIOC admits in its Brief as cross-appellant that "[t]he Severance Plan can only pay benefits in accordance with its terms--all of its terms." (CIOC Brief at 26). As discussed in text above, the terms of CIOC's Severance Plan did not provide for an exclusion for those employees who signed Continuance Agreements. Moreover, the terms of the Plan, reproduced at typescript p. 15 supra, provide for individual discretionary evaluations
 
 
 [8]
 In Spanos v. Skouras Theatres Corp., 364 F.2d 161, 169 (2d Cir.1966), cited with approval in Cross & Cross Properties v. Everett Allied Co., 886 F.2d 497, 501 (2d Cir.1989), the court (per Friendly, J.) held, citing 3A Corbin, Corbin on Contracts, § 767, at 540 (1960):
 One who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape liability for not rendering his promised performance by preventing the happening of the condition on which it was promised.
 See 5 Williston on Contracts § 677, at 224 (3d ed. 1961):
 It is a principle of fundamental justice that if a promisor is himself the cause of the failure of performance, either of an obligation due him or of a condition upon which his own liability depends, he cannot take advantage of the failure.
 Here, CIOC unjustly prevented the prior case-by-case approval and, by doing so, eliminated that condition--a condition of its own promissory duty--as a condition to be satisfied. CIOC cannot be permitted to take advantage of its own wrongful act and thereby escape liability, when it did not render its promised performance, in this case discretionary case-by-case approval of an employee's severance pay award. It prevented the happening of its "prior approval" condition by automatically barring severance benefits to any employee who entered into a Continuance Agreement.
 
 
 [9]
 29 U.S.C. § 1132(g) provides:
 (1) In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party.
 (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 [delinquent contributions] of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
 (B) interest on the unpaid contributions,
 (E) such other legal or equitable relief as the court deemed appropriate.
 
 
 [10]
 See Sweet v. Consolidated Aluminum Corp., 913 F.2d 268 (6th Cir.1990) (awarding prejudgment interest under ERISA in order to make employee whole); Bricklayers' Pension Trust Fund v. Taiariol, 671 F.2d 988, 990 (6th Cir.1982) (under ERISA, "the general rule is that in the absence of a statutory provision the award of prejudgment interest is in the discretion of the court.")
 
 
 [11]
 Short v. Central States Pension Fund, 729 F.2d 567, 576 (8th Cir.1984) (when benefits under ERISA were denied, prejudgment interest ordered to be payable, otherwise "the relief would fall short of making [the employee] whole because he had been denied the use of the money which was his.")
 
 
 [12]
 See Third Circuit Internal Operating Procedures § 9.1, providing that the holding of a panel in a reported opinion is binding on subsequent panels and may not be overturned other than by an in banc court
 
 
 [13]
 See e.g. O'Donnell v. United States, 891 F.2d 1079, 1081 (3d Cir.1989) (appellate review of the district court's entry of summary judgment in a non-frivolous case is almost impossible if the district court fails to set forth reasons for its summary judgment ruling); Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir.1984) (stressing the importance of the district court's articulation of reasons underpinning its exercise of discretion in dismissing a complaint with prejudice for failure to comply with pretrial orders); Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir.1984) (requiring that the district court's discretionary decision to enter a default judgment be supported by articulation of its consideration of required factors); Allis Chalmers Corp. v. Philadelphia Electric Co., 521 F.2d 360, 364 (3d Cir.1975) (requiring analysis of factors leading the district court to certify a Rule 54(b) final entry of judgment). See also United States v. Criden, 648 F.2d 814, 817-19 (3d Cir.1981) (approving the district court's articulation of the factors it analyzed and weighed when it considered the common law presumption of access to broadcast evidence, as providing "a firm base for an appellate judgment that discretion was soundly exercised")
 
 
 [1]
 Other courts have also allowed broad reservations of discretion by employers. See, e.g., Cattin v. General Motors Corp., 955 F.2d 416 (6th Cir.1992); Reichelt v. Emhart Corp., 921 F.2d 425 (2d Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2854, 115 L.Ed.2d 1022 (1991); Alday v. Container Corp. of America, 906 F.2d 660 (11th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 675, 112 L.Ed.2d 668 (1991); Young v. Standard Oil (Indiana), 849 F.2d 1039 (7th Cir.), cert. denied, 488 U.S. 981, 109 S.Ct. 529, 102 L.Ed.2d 561 (1988)
 
 
 [2]
 The district court also held that "the receipt of a continuance benefit is not relevant to eligibility for the severance benefits ... whether that receipt is considered an automatic disqualification from severance benefits or merely a factor in a discretionary decision to deny them." App. at 223 (emphasis added)
 
 
 [3]
 The severance plan states in at least three places that CIOC reserves discretion over the approval of severance benefits:
 Under circumstances and conditions as defined by the Company, subject employees whose employment is terminated for specified reasons may become eligible for a severance allowance.
 Approvals--A severance allowance is payable only when prior approval is obtained from the Division President, Group Vice President and the corporate Vice President of Personnel.
 The procedures and allowances contained herein are not to be automatically applied to any employment termination, and the application of these procedures and allowances to an incident of employment termination shall not serve as a precedent for any subsequent employment termination. Each incidence of employment termination will be evaluated as an isolated occurrence and the Company shall determine in each instance the applicability of these allowances.
 App. at 220-21 n. 5 (emphasis added). Thus, I disagree with the majority's assertion that CIOC has imported new conditions into its benefits plan, without giving prior notice to employees. See Maj. op. at 1008.