June E. HOGAN, Individually and as Administratrix of the Estate of Michael J. Hogan, Deceased, Plaintiff–Appellant,

v.

CONSOLIDATED RAIL CORPORATION, Defendant–Appellant,

Excelsior Truck Leasing Company, Defendant,

Norfolk & Western Railway Company, also known as Norfolk & Southern Railway Company, Defendant–Appellee.

Nos. 363, 364, Dockets 91–7625, 91–7627.

United States Court of Appeals, Second Circuit.

Argued Oct. 15, 1991.

Final Submissions Oct. 31, 1991.

Decided April 6, 1992.

Marvin I. Barish, P.C., Philadelphia, Pa., for plaintiff-appellant, joined brief of defendant-appellant.

Susan C. Roney, Buffalo, N.Y. (Laurie S. Bloom, Mary C. Baumgarten, Nixon, Hargrave, Devans & Doyle, on the brief), for defendant-appellant.

Thomas F. Segalla, Buffalo, N.Y. (Patricia Gillen, Saperston & Day, on the brief), for defendant-appellee.

Before: KEARSE, PRATT, and WALKER,* Circuit Judges.

KEARSE, Circuit Judge:

Plaintiff June E. Hogan appeals from a judgment of the United States District Court for the Western District of New York, John T. Elfvin, Judge, dismissing so

---

* Judge Lumbard, originally a member of the panel, recused himself and was replaced by Judge Walker.

much of her complaint as asserted a negligence claim against defendant Norfolk & Western Railway Company ("N & W") in connection with the death of her husband Michael J. Hogan ("Hogan"). Defendant Consolidated Rail Corporation ("Conrail") appeals from so much of the judgment as dismissed its cross-claim against N & W. The district court granted partial summary judgment dismissing the claims against N & W on the ground that plaintiff and Conrail had failed to come forward with sufficient evidence that any negligence by N & W contributed to the accident leading to Hogan's death. The court later directed that a final judgment embodying its partial summary judgment be entered pursuant to Fed.R.Civ.P. 54(b). For the reasons below, we conclude that the Rule 54(b) certification was an abuse of discretion and that this Court lacks jurisdiction to hear the appeals.

## I. BACKGROUND

The undisputed facts and the evidence developed in the pretrial proceedings thus far reveal the following. Hogan was employed by Conrail as foreman of a track maintenance crew. On the morning of October 19, 1987, just prior to the fatal accident, Hogan's Conrail crew was making repairs on tracks in Portland, New York. The pertinent section of Conrail track was approximately 114 feet away from tracks owned by N & W, and at the same time an N & W crew was cutting brush in the vicinity of its own tracks. Prior to the accident, Conrail employees had observed brush-cutting debris flying onto the Conrail right-of-way from the direction of the N & W operation and had complained to Hogan that the debris could cause injury to members of the Conrail crew. Hogan had indicated that he would try to talk to the N & W crew. Hogan was found dead after he was run over, on Conrail property, by a truck owned by defendant Excelsior Truck Leasing Company ("Excelsior") and driven in reverse by an employee of Conrail. The driver of the truck did not see Hogan until after the accident. There were no eyewitnesses.

Plaintiff commenced this wrongful death action against Conrail, N & W, and Excelsior, asserting claims against Conrail under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (1988) ("FELA"), and against N & W on a common-law negligence theory, premising jurisdiction on both FELA and 28 U.S.C. § 1332 (1988) (diversity of citizenship). Her claim against N & W asserted that N & W had been negligent in the brush-cutting operation and had caused debris to hit Hogan, suggesting that this had rendered him unable to avoid being run over by the Conrail-operated truck. Conrail cross-claimed against N & W on the same premise, contending that N & W was at least jointly liable for Hogan's death.

The parties proceeded to conduct discovery seeking to determine, *inter alia,* the cause of the accident. A Conrail employee who saw Hogan lying in front of the Conrail truck immediately after the accident testified that Hogan had a head laceration and that there was a piece of wood in the vicinity of his head and shoulders. The coroner who had been called to the scene stated in an affidavit that he had not seen any wood, metal, or freshly cut brush near Hogan's body. He had observed a crushing injury to Hogan's head, but his report did not mention a laceration. No debris was found in Hogan's head wound; and no blood or human tissue was found on the piece of wood that the Conrail employee had seen near Hogan's head.

In light of the evidence elicited during discovery, N & W moved pursuant to Fed. R.Civ.P. 56 for dismissal of the claims against it on the ground that plaintiff and Conrail had failed to come forward with any evidence to indicate that any N & W debris had struck Hogan or any other possible causal connection between N & W's activities and Hogan's death. N & W contended that it was entitled to summary judgment because there was insufficient evidence to constitute a *prima facie* case of negligence against it. In a Memorandum and Order dated January 15, 1991 ("Decision"), 1991 WL 5142, the district court agreed.

The court noted that though under New York law the plaintiff in a wrongful death case "is emburdened by a lower standard of proof than in a personal injury case, where the victim is available to testify as to cause ..., this does not mean that a plaintiff may maintain a wrongful death cause of action based only upon speculation or guesses." *Id.* at 6. In the present case, the court noted that there was "no evidence whatsoever that the piece of wood found near Hogan's head actually hit him," *id.* at 9; that the coroner and pathologist had found that Hogan's death was caused by multiple skull fractures and extreme skull compression, compatible with a truck running over his head; and that at the time of the accident, substantial noise had been created by a Conrail train passing, with whistle blowing, raising the possibility that Hogan had simply failed to hear the truck's back-up alarm. The court concluded as follows:

> Thus, there is simply no evidence that links—with more than mere conjecture—N & W's brush-cutting activities with Hogan's demise. While it is possible that Hogan may have been hit by a piece of flying debris, such a conclusion simply cannot be reached without speculation. There are too many unknowns and too many other possible reasons for the accident. He may have slipped and fallen into the path of the truck. He may have, for some medical reason, fallen. He may have been looking away, distracted, and simply not heard the truck's back-up alarm. "If the circumstantial evidence presented lends itself equally to several conflicting inferences, the trier of fact is not permitted to select the inference it prefers, since to do so would be [the] equivalent of engaging in pure speculation about the facts."

*Id.* at 9–10 (quoting *Mehra v. Bentz,* 529 F.2d 1137, 1139 (2d Cir.1975), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976)).

In an order dated June 4, 1991, the court directed that a final judgment dismissing all claims against N & W be entered pursuant to Rule 54(b), stating the following reason:

> This Court finds that the January 15, 1991 summary judgment was a final judgment as to Norfolk & Western because it disposed of all claims against that party. This Court also finds that there is no just reason to delay any appeal from this summary judgment. *See* Fed.R.Civ.P. rule 54(b). Indeed, if entry of final judgment is denied presently and, on appeal from the judgment involving the remaining defendant(s), it is determined that this Court's January 15, 1991 summary judgment was incorrectly granted, a complete new trial would have to be held. Because Conrail asserts that Norfolk & Western is at least partly responsible for any liability that might be determined against Conrail, this Court deems that the correctness *vel non* of its January 15, 1991 summary judgment should be determined prior to trial.

June 4, 1991 Order at 2, 1991 WL 100549. These appeals followed.

## II. DISCUSSION

On appeal, Plaintiff and Conrail contend that the district court erred in granting summary judgment in favor of N & W, arguing that the evidence here "would clearly support a jury finding that [N & W]'s negligence proximately caused Hogan's death." (Conrail brief on appeal at 22.) Following oral argument, this Court asked the parties to submit briefs on the question of "whether the grounds stated in the district court's June 4, 1991 order, directing that a final judgment be entered pursuant to Fed.R.Civ.P. 54(b) on the partial summary judgment granted in favor of [N & W] were sufficient for a Rule 54(b) certification." Having received those briefs, we conclude, for the reasons below, that the certification was an abuse of discretion and that this Court lacks jurisdiction to hear these appeals.

In addition, we raise a question as to federal subject matter jurisdiction over the claims against N & W, to be explored by the district court.

### A. *Appellate Jurisdiction*

■ Rule 54(b) provides an exception to the general principle that a final judgment

is proper only after the rights and liabilities of all the parties to the action have been adjudicated. It empowers the district court to enter a final judgment as to fewer than all of the parties in an action, but "only upon an express determination that there is no just reason for delay." Fed.R.Civ.P. 54(b). The determination of whether to grant Rule 54(b) certification is committed to the discretion of the district court and will be set aside only for an abuse of discretion. *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8–10, 100 S.Ct. 1460, 1465–66, 64 L.Ed.2d 1 (1980) (to justify reversal, district court's determination must be "clearly unreasonable"); *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 437, 76 S.Ct. 895, 900–01, 100 L.Ed. 1297 (1956); *Cullen v. Margiotta*, 811 F.2d 698, 711 (2d Cir.), *cert. denied*, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). The district court's discretion, however, is to be exercised sparingly in light of the " 'historic federal policy against piecemeal appeals,' " *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. at 8, 100 S.Ct. at 1465 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. at 438, 76 S.Ct. at 901).

■ Where the complaint is dismissed as to one defendant but not others, the court should not, as a general matter, direct the entry of a final judgment pursuant to Rule 54(b) if the same or closely related issues remain to be litigated against the undismissed defendants. *See, e.g., Cullen v. Margiotta*, 811 F.2d at 710; *Arlinghaus v. Ritenour*, 543 F.2d 461, 463–64 (2d Cir. 1976) (per curiam) (appeal dismissed where decision of issues presented would implicate rights of other defendants who were not parties to the appeal). In such circumstances, where the resolution of the remaining claims could conceivably affect this Court's decision on the appealed claim, *see Campbell v. Westmoreland Farm, Inc.*, 403 F.2d 939, 943 (2d Cir.1968); *Cullen v. Margiotta*, 618 F.2d 226, 228 (2d Cir.1980) (per curiam), the interlocutory order of dismissal should normally remain interlocutory and therefore subject to appropriate revision until the liabilities of all the defendants have been adjudicated, *see* Fed.R.Civ.P. 54(b) (interlocutory order adjudicating "rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and … is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties"). Certification under Rule 54(b) should be granted only where there are " 'interest[s] of sound judicial administration' " and efficiency to be served, *Curtiss–Wright Corp. v. General Electric Co.*, 446 U.S. at 8, 100 S.Ct. at 1465 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. at 437, 76 S.Ct. at 900–01), or, in the "infrequent harsh case," *Ansam Associates, Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 445 (2d Cir.1985), where "there exists 'some danger of hardship or injustice through delay which would be alleviated by immediate appeal,' " *Cullen v. Margiotta*, 618 F.2d at 228 (quoting *Brunswick Corp. v. Sheridan*, 582 F.2d 175, 183 (2d Cir. 1978)). A district court's statement simply that "there is no just reason for delay" is not sufficient to indicate that the case is an exceptional one in which piecemeal appeals should be permitted. *See, e.g., Hudson River Sloop Clearwater, Inc. v. Department of the Navy*, 891 F.2d 414, 419 (2d Cir.1989); *Ansam Associates, Inc. v. Cola Petroleum, Ltd.*, 760 F.2d at 445; *Cullen v. Margiotta*, 618 F.2d at 228.

■ In the present case, we do not regard the district court's reason for entering a Rule 54(b) certification as sufficient. Though the court stated that "there [wa]s no just reason to delay," it gave no indication that the case was an exceptional one or that there would be any unusual hardship in requiring plaintiff and Conrail to await, in accordance with normal federal practice, the disposition of the entire case before obtaining appellate review of the dismissal of their claims against N & W. Rather, the court's purpose in seeking to enter an immediate final judgment of dismissal in favor of N & W was to obtain pretrial appellate review of its assessment of the evidence against N & W. Thus, the court noted Conrail's assertion that N & W would be "at least partly responsible for any liability that might be determined

against Conrail," and stated that the reason for its certification was its desire that "the correctness *vel non* of its ... summary judgment ... be determined prior to trial," in order to avoid, if it had erred in its assessment of the sufficiency of the evidence against N & W, "a complete new trial." June 4, 1991 Order at 2. Though we sympathize with the district court's desire to avoid a retrial of the entire case if its assessment of the evidence as to N & W's role is erroneous, the interrelationship of the dismissed and surviving claims is generally a reason for *not* granting a Rule 54(b) certification, not a reason for granting it, *see, e.g., Cullen v. Margiotta,* 811 F.2d at 710; *id.* at 711 ("In a case involving multiple claims, the court should not enter final judgment dismissing a given claim unless that claim is separable from the claims that survive."), either because the remaining proceedings in the district court may "illuminate appellate review of" the dismissed claims, *Cullen v. Margiotta,* 618 F.2d at 228, or because those proceedings may suggest that the dismissal should be modified as is expressly permitted by Rule 54(b). Here, for example, it is possible that further discovery by plaintiff or further investigation by Conrail could bring to light evidence sufficient to warrant submitting claims against N & W to a jury. Were this to occur, it would be open to the district court under Rule 54(b), if no final judgment has been entered, to amend its interlocutory order accordingly. The appropriate course of action for the district court, in order to minimize the likelihood of a duplicative retrial, is to take care not to grant summary judgment without viewing all the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in favor of that party, not to ask for an interim opinion from the court of appeals, thereby forcing successive appellate panels to review the case. *See generally Harriscom Svenska AB v. Harris Corp.,* 947 F.2d 627, 631 (2d Cir.1991) (federal concept of sound judicial administration and efficiency is not normally furthered by "hav[ing] piecemeal appeals that require two (or more) three-judge panels to familiarize themselves with a given case,

instead of having the trial judge, who sits alone and is intimately familiar with the whole case, revisit a portion of the case if he or she has erred in part and that portion is overturned following the adjudication of the whole case"). The concern expressed by the dissent, *i.e.,* to avoid piecemeal trials, would be present in virtually any case in which the district court dismisses some of the parties from the case and proceeds to trial with respect to others. To deem sufficient under Rule 54(b) a finding simply that an immediate appeal might avoid the need for a retrial, as advocated by the dissent, could only contravene the federal policy against piecemeal appeals.

■ In sum, absent any special circumstances indicating that adherence to the normal and federally preferred practice of postponing appeal until after a final judgment has been entered, disposing of all the claims of all the parties, will cause unusual hardship or work an injustice, the district court's preference to have pretrial appellate review of its assessment of the sufficiency of the evidence to support a given claim is an improper basis for entry of an immediate partial final judgment. Accordingly, we conclude that the Rule 54(b) certification in the present case was an abuse of discretion and that we lack jurisdiction to hear the present appeals.

## B. *District Court Jurisdiction*

In light of the possibility of N & W's involvement in further proceedings in the district court or in an eventual appeal from a final judgment, we also address a question as to the district court's subject matter jurisdiction over the claims against N & W, the answer to which is unclear on the record before us.

Plaintiff premised subject matter jurisdiction of her claims in part on FELA and in part on diversity of citizenship. FELA provides jurisdiction over the claims against Conrail because Conrail was Hogan's employer, but not over the other defendants. This Court has never squarely addressed the question of whether a plaintiff may invoke pendent party jurisdiction under FELA, *see Roco Carriers, Ltd. v.*

*M/V Nurnberg Express*, 899 F.2d 1292, 1296 (2d Cir.1990) (discussing Eighth Circuit's disallowance of pendent party jurisdiction under FELA), and though "supplemental jurisdiction" over similar claims is currently authorized by 28 U.S.C.A. § 1367 (West Supp.1991) (effective December 1, 1990, district court generally has supplemental jurisdiction over state-law claims against a non-diverse party if it has original jurisdiction over related claims against another party), the present suit was commenced before that authorization became effective.

■ The district court did not suggest that it had pendent or supplemental jurisdiction over the claim against N & W but rather found that it had diversity jurisdiction on the basis that "plaintiff is a citizen of Ohio and all three defendants are stated to have a principal place of business in Pennsylvania. Complaint at ¶¶ 2–4." Decision at 5. The allegations of the complaint were, however, insufficient to plead diversity jurisdiction, and it is not clear from the record before us that such jurisdiction existed. For diversity purposes, a corporation is deemed to be a citizen both of the state in which it has its principal place of business and of any state in which it is incorporated. 28 U.S.C. § 1332(c)(1). The complaint alleged that N & W was "incorporated in a number of states" (Complaint ¶ 4), without identifying any of those states. N & W denied this allegation without revealing its state of incorporation. N & W also did not answer responsively to the complaint's allegation that the court had diversity jurisdiction, taking the position that this was an allegation of law to which no response was required. Though there may be some dispositive information elsewhere in the record, so far as we are aware, N & W could be, like plaintiff, a citizen of Ohio.

Accordingly, we suggest that the district court determine whether there was a proper factual basis for plaintiff's invocation of diversity jurisdiction with respect to her claim against N & W.

## CONCLUSION

We have considered all of the parties' arguments in support of appellate jurisdiction and have found them to be without merit. The appeals are dismissed.

PRATT, Circuit Judge, dissenting:

In directing the clerk to enter a partial final judgment as to all claims against the N & W, Judge Elfvin, in compliance with *Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283 (2d Cir.1974), filed a "brief reasoned statement in support of his determination that 'there is no just reason for delay'" which included the following language:

> This Court also finds that there is no just reason to delay any appeal from this summary judgment. *See* Fed.R.Civ.P. [54(b)]. Indeed, if entry of final judgment is denied presently and, on appeal from the judgment involving the remaining defendant(s), it is determined that this Court's January 15, 1991 summary judgment was incorrectly granted, a complete new trial would have to be held.

The majority does not "regard the district court's reason for entering a Rule 54(b) certification as sufficient." I disagree. The proper inquiry is whether Judge Elfvin abused his discretion in concluding that there was "no just reason for delay", not whether we would reach the same conclusion. Since the majority's dismissal of the appeal wastes judicial resources, is contrary to settled Supreme Court precedent, and, indeed, will likely require two full, virtually identical trials in the district court, I dissent.

As applicable to this case, Fed.R.Civ.P. 54(b) reads:

> [W]hen multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the * * * parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

This portion of the rule, which allows the entry of judgment when all of the claims as to one party are disposed of, was added in

1961, because the "danger of hardship through delay of appeal until the whole action is concluded may be at least as serious in the multiple-parties situations as in multiple-claims cases". Fed.R.Civ.P. 54 advisory committee's notes on 1961 amendment.

While the majority gives passing mention that our review is for "abuse of discretion", *see, e.g., Curtiss–Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 10, 100 S.Ct. 1460, 1466, 64 L.Ed.2d 1 (1980), its decision grants no deference whatsoever to the district court's "sound judicial discretion". *Id.* at 8, 100 S.Ct. at 1465. By engaging in a *de novo* reweighing of the equities and reassessment of the facts, the majority also flouts the Supreme Court's command that "the proper role of the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighings and assessments are juridically sound and supported by the record". *Id.* at 10, 100 S.Ct. at 1466. But, "[t]he task of weighing and balancing the contending factors is peculiarly one for the trial judge, who can explore all the facets of a case." *Id.* at 12, 100 S.Ct. at 1467.

The majority correctly cites *Curtiss–Wright* for the proposition that we review the discretion of the district court through the lens of "sound judicial administration". 446 U.S. at 8, 100 S.Ct. at 1465. (I note parenthetically that the majority adds "efficiency"—a word which has justified many injustices throughout history—to the Supreme Court's standard, *ante*, at 1025, despite the fact that the term does not appear in *Curtiss–Wright*.) Significantly, however, its view of "sound judicial administration" is not through a lens, but at a mirror, for the opinion is concerned only with the administration of the circuit court's docket, and simply ignores the arguably greater need for "sound judicial administration" in the district court, which "must daily grapple with managing a crowded civil docket". *Perez v. Ortiz*, 849 F.2d 793, 796 (2d Cir. 1988) (finding appealable a 54(b) partial final judgment). By seeing the relationship between the district court and the circuit in this fashion, the majority drains the district

court's "discretion" of any significance whatsoever. The majority would review rule 54(b) certifications as the equivalent of our much different discretionary power to hear interlocutory appeals involving controlling questions of law under 28 U.S.C. § 1292(b), and this is simply wrong.

Under 28 U.S.C. § 1291, we "*shall* have jurisdiction of appeals from all final decisions of the district courts". (emphasis added). Had Hogan sued the N & W separately, her claim would beyond question be "finally decided" within the meaning of § 1291. But under the federal rules, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties", *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), and June Hogan heeded this impulse by joining both Conrail and the N & W as parties defendant. Rule 20(a) permitted her to do this: multiple parties may be joined in one civil action if the asserted claims for relief against the parties are "in respect of or arising out of the same transaction, occurrence, or series of transactions and occurrences and if any question of law or fact common to all [defendants] will arise in the action." After Conrail asserted its third party claim for contribution against the N & W, as permitted by rule 14(a), the district court's summary judgment dismissed both of these claims and let the N & W out of the case entirely.

Rule 54(b) contemplates this situation and expressly allows "the entry of a final judgment as to one or more but fewer than all of the * * * parties". Under the majority's approach, however, if parties are interrelated enough to merit joinder under rule 20(b), they are simultaneously too interrelated to merit a rule 54(b) partial final judgment when one of the parties is dismissed. This interpretation would write rule 54(b) out of the multiple-party context by judicial fiat.

There is yet more fundamental error in the majority opinion. It says that rule 54(b) partial final judgments should be entered only in "exceptional" cases where "unusual hardship" would be worked on

the litigants. *Ante*, at 1025. The only authority given for this proposition is a citation to the "infrequent harsh case" language of *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 445 (2d Cir. 1985). This phrase—"infrequent harsh case"—originated in the advisory committee notes to the 1946 amendment to rule 54. But over a decade ago the Supreme Court, in *Curtiss–Wright*, chided the third circuit for using this term as a standard for rule 54(b) review: "the phrase 'infrequent harsh case' in isolation is neither workable nor entirely reliable as a benchmark for appellate review." 446 U.S. at 10, 100 S.Ct. at 1466. Despite this admonition, the majority builds its opinion around the phrase "infrequent harsh case" and the similarly unworkable adjectives "exceptional" and "unusual", and finds dismissable a case which is a paradigm for the use of rule 54(b).

Finally, the majority's decision guts the efficacy of summary judgment. Rule 56 allows defendants, such as the N & W, "to demonstrate in the manner provided by the Rule, prior to trial, that the claims [asserted by the plaintiff] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The N & W, believing that there were no genuine issues of material fact as to their causal role in Michael Hogan's death, moved for dismissal from the case. The district court agreed, and—but for the appeal—the N & W's attorneys could have packed their bags, closed their file, and billed their client for a job well done. If no appeal had been taken, the summary judgment would have served its purpose of streamlining the case in the district court, and avoided "the attendant unwarranted consumption of public and private resources." *Id.*

But since there was this attempted appeal, and a dismissal thereof, the N & W is left in litigation limbo. Are they in or out of the case? Judge Elfvin said "out", but the majority says "not so fast". The majority's proposed solution seems to be to keep the order of dismissal "interlocutory" and subject to later revision should "further discovery by plaintiff or further investigation by Conrail * * * bring to light evidence sufficient to warrant submitting claims against N & W to a jury." What should the N & W's attorneys now do? Close their file? Or should they continue to conduct discovery in this case from which they have been dismissed, in the event that further discovery by the other parties may bring up a genuine issue of material fact? Does the N & W even have standing to participate in future discovery or at trial? Since there is a risk (a good one, at that) of ultimate reversal of this "interlocutory" final judgment, once the entire case comes up on appeal from the "final" final judgment, should the N & W send a representative with a checkbook to settlement discussions? These and other questions leave all parties and the district court in a most unsatisfactory situation.

Judge Elfvin's conclusion that "a complete new trial would have to be held" if the summary judgment was improperly granted is not clearly erroneous; to the contrary, it is clearly correct. This case will now go to trial as *June Hogan v. Conrail*, and the following paradox is quite clear:

1. If Hogan wins the first trial, Conrail will appeal, relying on the incorrect grant of summary judgment to the N & W. We will reverse, and a retrial of the same liability facts must be held on Conrail's cross-claim, against the N & W, for contribution.

2. If Conrail wins the first trial, Hogan will appeal, relying on the incorrect grant of summary judgment to the N & W. We will reverse, and a retrial of the same liability facts must be held on Hogan's direct claim against the N & W.

Either way, final resolution of this controversy will require not one but two expensive, time-consuming trials of the same liability facts. Although we could readily save the litigants and the district court this wasteful duplication and its attendant uncertainties by reviewing at this time the documentary record before us to determine the relatively simple issue of whether summary judgment was properly granted, the majority insists that Judge Elfvin proceed

without our guidance on that issue and that he do so with the N & W hanging in limbo and with the knowledge that he may very well have to try the same case twice.

The majority suggests that Judge Elfvin could have avoided this injustice by "tak[ing] care not to grant summary judgment without viewing all the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in favor of that party". *Ante*, at 1026. In other words, "District judges, don't grant summary judgment unless you're *really* sure you're right." I thought district judges always did that.

I suspect that the majority drops this surprising hint on the merits because it sees this as a close case on the merits. So do I. But the majority seems to think that rule 54(b) gives us some measure of discretion whether to hear the appeal, and this is where I part company with my colleagues. They seem to expect the district court somehow to correct its own error without being told it is in error, while it seems apparent that, before entering its partial final judgment, the district court believed that it had already "take[n] care not to grant summary judgment without viewing all the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in favor of that party".

Finally, as a policy consideration, if applied generally the majority's approach would impose rigidity on the district courts where flexibility is desperately needed. In the name of justice and efficiency, the majority has reached the most unjust and inefficient result possible on this record. Judge Elfvin properly certified under rule 54(b) a final judgment dismissing all of Hogan's and Conrail's claims against the N & W.

Our rejection of this appeal reflects a profound misunderstanding of rule 54(b). I hope that this case is seen in the future merely as an unfortunate aberration in rule 54(b) jurisprudence.