Lillie Anne PEOPLES, Appellant,

v.

WARFIELD & SANFORD, INC., Appellee.

No. 94–CV–802.

District of Columbia Court of Appeals.

Argued April 11, 1995.

Decided June 26, 1995.

Joyce Notarius, for appellant.

George Campbell, for appellee.

Before FERREN and RUIZ, Associate Judges, and PRYOR, Senior Judge.

FERREN, Associate Judge:

This is an action for plaintiff-appellant's personal injuries from a falling elevator brought against two companies—Warfield & Sanford, Inc. (Warfield) and Elcon Enterprises, Inc. (Elcon)—which had been responsible for servicing the elevator during different time periods before the accident occurred. The trial court granted summary judgment for Warfield, denied a motion to vacate that judgment, and, without stating reasons, certified both orders as a "final judgment" pursuant to Super.Ct.Civ.R. 54(b)—despite the fact that plaintiff's action was still pending against Elcon and that Elcon's cross-claim was pending against War-

field. In appealing from the orders granting summary judgment and denying her motion to vacate, plaintiff-appellant, Lillie Anne Peoples, contends that the trial court (1) erred in granting summary judgment because the court failed to consider all the evidence in the light most favorable to her, and (2) abused its discretion in denying her motion to vacate under Super.Ct.Civ.R. 60(b)(2) because it refused to recognize newly discovered evidence. We raise, *sua sponte*, the question whether the trial court abused its discretion in entering final judgment under Rule 54(b) in light of the pending claim and cross-claim.

## I.

Appellant was injured on November 9, 1988, when an elevator in which she was riding in the United States Customs Building at 1101 Constitution Avenue, N.W., descended rapidly for several floors and came to an abrupt halt. Pursuant to a contract with the General Services Administration (GSA), Warfield was responsible for service and maintenance of the elevator from October 1, 1985, through October 31, 1988, nine days before the accident occurred. Elcon took over the service contract on November 1, 1988.

Almost three years later, on October 31, 1991, appellant filed a complaint for negligence, naming both Warfield and Elcon as defendants. The defendants answered, and Elcon filed a cross-claim against Warfield, which Warfield answered.

The court set April 14, 1992 as the initial deadline for filing requests for discovery. After appellant filed two sets of interrogatories and received answers, she filed a motion with defendants' consent to extend discovery, which the trial court granted until June 14. On May 5, Warfield sent interrogatories to appellant along with requests for production of documents. Appellant never responded. On June 15 and again on June 30, after the deadline for requesting discovery had expired, appellant served Warfield with additional discovery requests, including another request for production of documents.

On August 28, 1992, two and a half months after the extended deadline for filing discovery requests had expired, appellant filed still another motion for extension of discovery. Three days later, on August 31, Warfield filed a motion for summary judgment, contending that the time for discovery had expired without appellant's alleging any breach of duty by Warfield or proffering any evidence of Warfield's negligence. On September 4, appellant received Warfield's responses to her June discovery requests. On September 11, Warfield filed a motion opposing appellant's August 28 request for extending the discovery deadline. On October 7, Judge Eilperin denied appellant's motion to extend and granted Warfield's motion for summary judgment. The judge noted that "[p]laintiff had not established through any admissible evidence a factual basis for its lawsuit against this defendant."

On October 30, 1992, appellant's counsel filed a motion to withdraw, as well as a motion for reconsideration of the motion to extend time for discovery. On December 3, the trial court granted both motions and extended discovery until February 1, 1993.[1] On December 15, 1992, new counsel entered an appearance for appellant and, in January and February, 1993, deposed several GSA employees who were involved with the contract between GSA and Elcon. During that period appellant's counsel also deposed several elevator technicians and mechanics employed by Elcon at the time of appellant's accident. Appellant also deposed at least one employee of Warfield and obtained substantial additional documentation from Warfield.

On April 22, 1993, appellant filed a motion to vacate the trial court's order granting summary judgment for Warfield. She contended that the evidence obtained from Warfield in early 1993 enabled appellant's expert, for the first time, to render an opinion to a reasonable degree of engineering certainty that Warfield had negligently maintained the elevator over a prolonged period of time,

1. Although the record on appeal is unclear, this extension presumably applied only to discovery between appellant and Elcon, as well as between Elcon and Warfield, since Warfield remained in the case only as a defendant in Elcon's cross-claim. Discovery was later extended, once again, until April 1, 1993.

suggesting that this negligence was a proximate cause of appellant's injury. Appellant then argued that this evidence was "newly discovered" within the meaning of Super.Ct.Civ.R. 60(b)(2) and, for that reason, justified vacation of the summary judgment order. On June 2, Judge Cushenberry summarily denied the motion. A year later, on June 6, 1994, responding to a motion filed by appellant, Judge Zeldon entered an order for final judgment for Warfield pursuant to Super.Ct.Civ.R. 54(b). On June 24, 1994 appellant filed a timely notice of appeal.

## II.

### A.

Although appellant challenges the grant of summary judgment, her primary contention on appeal is that her new counsel's additional discovery from Warfield in early 1993, several months after entry of summary judgment, unearthed new evidence that, for the first time, gave substantial life to her negligence claim against Warfield, and thus warranted reversal for abuse of discretion in denying her motion to vacate under Rule 60(b)(2). If we were to agree, this presumably would mean that appellant's claim had renewed vitality against two defendants, not just one (Elcon). Implicit in this argument for permitting, in effect, an interlocutory appeal is appellant's hope, if not expectation, that this court would reverse and remand the case against Warfield to a trial judge who had been waiting for our decision before commencing or resuming trial. In that case, the trial could go forward against both defendants, Warfield and Elcon, to sort out which of them (if either) was responsible for negligent maintenance of the elevator. The presumed virtue in this approach would be the avoidance of an expensive retrial of the entire case if a post-trial appeal were to show that Warfield had been removed, erroneously, as one of the defendants. *See Cullen v. Margiotta,* 811 F.2d 698, 711 (2d Cir.) *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987) (citing *Hunt v. Mobil Oil Corp.,* 550 F.2d 68, 70 (2d Cir.), *cert. denied,*

434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977)).

This focus on avoiding a second trial may be useful in rare instances, *see Hunt,* 550 F.2d at 70, but it is misplaced in this case. In the first place, appellant was in no hurry to achieve a pretrial appellate reversal; she waited a year after denial of her motion to vacate before obtaining Rule 54(b) certification. Furthermore, there is nothing to indicate that the proceedings against Elcon (and between Elcon and Warfield) have been suspended; a second trial may be necessary anyway if appellant were to prevail here on appeal. Nor, in any event, is there an established policy favoring the deferral or suspension of trials involving multiple defendants to permit an interlocutory appeal of a dismissal or summary judgment for one of the parties before the trial proceeds to final judgment on all claims presented. *See Hogan v. Consolidated Rail Corp.,* 961 F.2d 1021, 1026 (2d Cir.1992). To the contrary, for most cases the operating assumption must be that if an appeal goes forward under Rule 54(b) as to one defendant, the trial will go forward as to the other defendants, creating the possibility, indeed likelihood, of two appeals arising out of the same litigation. The likelihood of a second trial, however, is the same whether the appeals are resolved separately or as one, since the issues raised by all who lose in the trial court must be resolved sooner or later, and any second trial presumably will await the combined results. Ordinarily, therefore, because Rule 54(b) is not a device for preventing a second trial, we have to focus on the impact a pretrial or mid-trial appeal will have on the appellate process while the underlying litigation itself proceeds unabated.

### B.

In light of these considerations, although neither party has challenged our jurisdiction, we raise on our own motion the question whether the trial court abused its discretion in granting Rule 54(b) certification of its order granting summary judgment for Warfield and of its order denying appellant's motion to vacate.[2] This court may raise lack

---

**2.** Super.Ct.Civ.R. 54(b) provides:

*Judgment upon multiple claims or involving multiple parties.* When more than 1 claim for

of subject matter jurisdiction at any time, *see Customers Parking, Inc. v. District of Columbia,* 562 A.2d 651 (D.C.1989), and the federal circuit courts of appeals commonly have raised on their own initiatives the propriety of a rule 54(b) certification. *See, e.g., Hogan,* 961 F.2d at 1024; *United States General, Inc. v. Albert,* 792 F.2d 678, 680 (7th Cir.1986).[3]

Under Rule 54(b), *supra* note 2, the trial court may enter final judgment against one or more (but fewer than all) parties "upon an express determination that there is no just reason for delay."[4] The Supreme Court has said: "It is left to the sound judicial discretion of the [trial] court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal." *Curtiss–Wright Corp. v. General Elec. Co.,* 446 U.S. 1, 8, 100 S.Ct. 1460, 1465, 64 L.Ed.2d 1 (1980); *see Cohen v. Owens & Co., Inc.,* 464 A.2d 904, 906 (D.C.1983) (same). "[I]n deciding whether there are no just reasons to delay the appeal of individual final judgments ... a [trial] court must take into account judicial administrative interests as well as the equities involved." *Curtiss–Wright Corp.,* 446 U.S. at 8, 100 S.Ct. at 1465. Consideration of principles of sound judicial administration "is necessary to assure that application of the Rule effectively preserves the historic ... policy against piecemeal appeals." *Id.* (internal quotation marks and citation omitted).

The "policy against piecemeal appeals" is premised on more than avoiding mere judicial inefficiency; it includes substantial concern that a premature appeal could distort, and thus defeat, proper resolution of the entire case. In order to prevent such a result, therefore, the claim underlying the final judgment on appeal under Rule 54(b) must be "separable from the claims that survive." *Cullen,* 811 F.2d at 711; *see Hogan,* 961 F.2d at 1025 ("the court should not, as a general matter, direct the entry of a final judgment pursuant to Rule 54(b) if the same or closely related issues remain to be litigated against the undismissed defendants"). Claims may be "separable" for this purpose even though they "arise[ ] out of the same transaction or occurrence," provided they involve "some different questions of fact and law and [can] be separately enforced," or call for different kinds of relief or for recoveries that are not mutually exclusive. *Cullen,* 811 F.2d at 711.

These abstract examples, however, are not sufficient in themselves to describe the kind of separability required to justify Rule 54(b) certification. For claims to be separable for this purpose, proceeding independently on two tracks—appeal and trial—the impact of the appellate and trial proceedings on each other must be minimal, if not negligible, so that neither proceeding can get

---

relief is presented in an action, whether as a claim, counterclaim, cross-claim, or 3rd party claim, or when multiple parties are involved, the Court may direct the entry of a final judgment as to 1 or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

**3.** The language of Super.Ct.Civ.R. 54(b) and FED. R.Civ.P. 54(b) are identical. "We have repeatedly held that when a local rule and a federal rule

are the same, we may look to federal court decisions interpreting the federal rule as 'persuasive authority in interpreting the [local rule].' " *Cohen v. Owens & Co., Inc.,* 464 A.2d 904, 906 n. 3 (D.C.1983) (citing *Vale Properties, Ltd. v. Canterbury Tales, Inc.,* 431 A.2d 11, 13 n. 3 (D.C. 1981)); *Dyhouse v. Baylor,* 455 A.2d 900, 901 n. 3 (D.C.1983) (per curiam) (same; citing Rule 54(b)).

**4.** This court repeatedly has held that the grant of summary judgment for fewer than all defendants does not present a final, appealable order without either "an express determination that there [was] no just reason for delay" or "an express direction for entry of judgment ... pursuant to Super.Ct.Civ.R. 54(b)." *Metropolitan Baptist Church, Inc. v. Minkoff,* 462 A.2d 460, 460 (D.C. 1983) (per curiam) (footnote omitted); *Dyhouse,* 455 A.2d at 901 (footnote omitted) (same); *see Cohen,* 464 A.2d at 906; *Dixon v. AM General Corp.,* 454 A.2d 1357, 1359–60 (D.C.1983) (per curiam).

in the way of the other. For example, Rule 54(b) certification would be inappropriate "where the resolution of the remaining claims [at trial] could conceivably affect the Court's decision on the appealed claim." *Id.* at 711; *see Hogan,* 961 F.2d at 1026 (court should not certify a final judgment under Rule 54(b) if remaining proceedings in district court "may 'illuminate appellate review of' the dismissed claims"). Similarly, the trial court should not certify a final judgment under Rule 54(b) if the trial proceedings themselves possibly will indicate that the dismissal or summary judgment was premature, and thus that the judgment "should be modified as is expressly permitted by Rule 54(b)." *Id.; see supra* note 2. Furthermore, Rule 54(b) should not be invoked if allowance of immediate review would create the possibility that the reviewing court would have to revisit the same issues in a subsequent appeal. *See Curtiss–Wright,* 446 U.S. at 6, 100 S.Ct. at 1464.

These three ways of testing separability all show how "the interrelationship of the dismissed and surviving claims is generally a reason for not granting a Rule 54(b) certification, not a reason for granting it." *Hogan,* 961 F.2d at 1026. The *Hogan* court elaborated:

> The appropriate course of action for the district court, in order to minimize the likelihood of a duplicative retrial, is to take care not to grant summary judgment without viewing all the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in favor of that party, not to ask for an interim opinion from the court of appeals, thereby forcing successive appellate panels to review the case.

*Id.*

In addition to separability, there is a hardship criterion. If—but only if—the court concludes that the criteria for separability of claims are satisfied, the equitable consequences to the parties flowing from delay of appellate review of an individual final judgment become relevant. *See Cullen,* 811 F.2d at 711. At that point, Rule 54(b) allows entry of a final judgment, but only if the trial court expressly determines, in the words of

the rule, that "there is no just reason for delay." *See id.* More specifically, such an entry "should be granted only if there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal." *Id.* (citations and internal quotation marks omitted).

In stressing that the hardship criterion is not relevant unless the court has found separability, we recognize a flexible enough standard for separability ("minimal" if not "negligible") to permit a court to certify a Rule 54(b) appeal when separability is less than absolute but the hardship equities are exceptionally strong.

Once the trial court has entered a Rule 54(b) order of final judgment, and this court is asked to review for abuse of discretion, our review must be deferential. According to the Supreme Court:

> [T]he proper role of the court of appeals is not to reweigh the equities or reassess the facts but to make sure that the conclusions derived from those weighing and assessments are juridically sound and supported by the record.
>
> \*　\*　\*　\*　\*　\*
>
> The question ... is likely to be close, but the task of weighing and balancing the contending factors is peculiarly one for the trial judge, who can explore all the facets of a case. As we have noted, that assessment merits substantial deference on review.

*Curtiss–Wright,* 446 U.S. at 10, 12, 100 S.Ct. at 1466, 1467.

### C.

We confront a complex decision based on the very complexity the trial court itself faced in addressing the Rule 54(b) issue. At the time final judgment was entered, appellant's claim against Elcon and Elcon's cross-claim against Warfield were still pending; thus, absent Rule 54(b) certification, there was a possibility that the entire matter would be resolved in a way that did not require appellate review of the judgment for Warfield, either by a settlement with, or a judgment against, Elcon. Or, at most, there

might have been one appeal combining resolution of all issues at the same time. As matters stand now, however, if we rule on this appeal, there will be at least one and possibly two appeals arising out of a case which in the end, might have yielded none or at most one.

■ In light of the potential costs to the judicial system itself, as well as to the parties, from an improvidently accepted Rule 54(b) judgment and appeal—and given our deferential standard of review that leaves considerable room for trial court discretion— we have to understand the implications of this appeal much more clearly than we are able to understand them at this time from the state of the record. The trial court has not supplied a statement of reasons for Rule 54(b) certification that completes its task of weighing and balancing the contending factors. *Curtiss–Wright,* 446 U.S. at 10, 100 S.Ct. at 1466. Generally speaking, a trial court's failure to explain a particular exercise of discretion is not necessarily fatal to appellate review if a valid reason "can be discerned" for the court's action. *Johnson v. United States,* 398 A.2d 354, 364 (D.C.1979). But in most Rule 54(b) situations, it would be too speculative for this court itself to try to sort out from the record all the pros and cons of certification in a particular case with multiple parties involving, for example, claims against two or more defendants and a cross-claim, as is the case here. When trial court certification portends piecemeal appeals, a clear statement of reasons for certification is essential for review. Accordingly, joining most of the federal circuit courts of appeals, we hold that a Rule 54(b) certification must be accompanied by a statement of reasons explaining why the judgment should be deemed final for purposes of appeal. *See Anthuis v. Colt Industries Operating Corp.,* 971 F.2d 999, 1003–04 & n. 4 (3d Cir.1992) (holding Rule 54(b) certification invalid because unaccompanied by any statement of "reasons and factors" underlying trial court's decision to grant certification); *Cullen,* 811 F.2d at 711. ("Since the appellate court may review the rule 54(b) certification for abuse of discretion, it does not suffice for the district court to announce its determination that 'there is no just cause for delay' in conclusory

form. Rather its certification must be accompanied by a reasoned, even if brief, explanation of its conclusion."); *Solomon v. Aetna Life Insurance Co.,* 782 F.2d 58, 62 (6th Cir.1986) ("In light of the district court's failure to provide reasons for the 54(b) certification, it is impossible for us to see this as the 'infrequent harsh case' in which final certification should be granted"); *Pahlavi v. Palandjian,* 744 F.2d 902, 905 (1st Cir.1984) ("At the least, a district court in cases such as this has an obligation to explain its conclusion that there is 'no just reason for delay' in entering final judgment."); *Morrison–Knudsen Co., Inc. v. Archer,* 655 F.2d 962, 965 (9th Cir.1981) ("The trial court should not direct entry of judgment under Rule 54(b) unless it has made specific findings setting forth the reasons for its order."); *see also Hayden v. McDonald,* 719 F.2d 266, 269 (8th Cir.1983) (per curiam) (although the 8th circuit has "declined to make mandatory a statement of reasons" under Rule 54(b), "the desirability of including such statements has been uniformly affirmed"); *Rothenberg v. Security Management Co., Inc.,* 617 F.2d 1149, 1150 (5th Cir.) (per curiam), *cert. denied,* 449 U.S. 954, 101 S.Ct. 359, 66 L.Ed.2d 218 (1980) (statement of reasons for Rule 54(b) certification "is left to the discretion of the district court and is not imposed as a requirement," but when reasons are unclear "it may be necessary for adequate appellate review to require that the district court's reasons be stated.").

In the event this court were to take jurisdiction over this appeal, reverse the trial court's denial of the motion to vacate summary judgment, and thereby permit appellant to renew her claim against Warfield on the basis of evidence discovered after summary judgment had been granted, there is every reason to believe—without an expression of reasons by the trial court to the contrary—that the efforts at a trial to sort out liability as between Warfield and Elcon would present factual issues as to each that overlap with one another and thus lead, potentially, to overlapping appeals. *See Pahlavi,* 744 F.2d at 904 ("the overlap between factual issues in the plaintiff's claim and in the defendant's counterclaims appears to be

extensive"). After all, as Elcon's cross-claim itself indicates, this is fundamentally a case where plaintiff is saying that one of two defendants (or possibly both) are liable for negligence, and that discovery and trial presumably will make clear who the principal culprit is, based on the direction critical evidence is found to point. This situation appears inherently to suggest a close connection, not severability, between the factual and legal issues.

On the other hand, suppose this court could be convinced that summary judgment had been properly entered against Warfield for lack of proffered evidence revealing negligence, and that there is little basis for believing appellant's discovery after summary judgment could have been properly used as "newly discovered evidence" to reopen the judgment under Rule 60(b)(2). Such determinations would indicate that there were no factual or legal issues that could generate overlapping appeals since the first ruling would have been based on a negligible, finite record and the second ruling would have proceeded from a legal analysis unaffected by the trial against Elcon. Even in that situation, however, at least as far as we can tell now, there would be no discernible reason to hear the appeal at this time. As we noted earlier, appellant might be satisfied by a judgment against, or settlement with, Elcon and, even if not, could pursue all appeals together as one, saving this court's time overall even if the issues as to each party would be different. Absent a reasoned trial court justification, therefore, we cannot perceive prejudice either to appellant or to Warfield from our declining to hear this appeal on the merits. Because appellant's complaint against Elcon, as well as Elcon's cross-claim against Warfield, are still pending, plaintiff still has an opportunity to prevail at trial, without need for this appeal, and, appellant in any event, will not lose her right eventually to appeal the judgment for Warfield if we decline to hear the appeal now. Similarly, because Warfield is still before the trial court on Elcon's cross-claim, Warfield has no reason to expedite this appeal instead of defending—or prosecuting—all appeals later at one time.

We do not foreclose the possibility of a Rule 54(b) statement that could convince us "there is no just reason for delay," based on a different analysis of the variables at work than we have perceived. There also may be indications of "hardship or injustice through delay" that are not apparent to us but "would be alleviated by immediate appeal," *Cullen*, 811 F.2d at 711 (citation omitted), assuming the separability criteria are met. Without a trial court statement of reasons dealing with the "separability" and "hardship" criteria, however, we are in no position to see the need for an appeal and to take jurisdiction at this time.

"Because we lack a competent Rule 54(b) certification, the district court's order ... lacks finality." *Anthuis*, 971 F.2d at 1004. We therefore must dismiss for lack of jurisdiction, leaving it to the trial court's discretion whether to enter final judgment again under Rule 54(b), accompanied by a statement of reasons adequate for our review.

*So ordered.*