LEE, J.,
for the court.
¶ 1. Mid-Delta Home Health (Mid-Delta) appeals the entry of summary judgment in favor of the Mississippi Association for Home Care (Association). Having determined that summary judgment was properly granted, we affirm.
FACTS
¶ 2. Mid-Delta was issued a license enabling it to provide home health services in a number of Mississippi counties. The Association filed suit to enjoin Mid-Delta from being licensed other than in six particular counties. Successful in its suit, the Hinds County Chancery Court enjoined Mid-Delta from operating its home health services in counties other than Holmes, Humphreys, Leflore, Sunflower, Yazoo and Tallahatchie counties.
*338 ¶ 3. Subsequently, Mid-Delta Home Health filed a complaint against Tri-County Home Health, Continue' Care Home Health, Continue Care Home Health, II, Alexander’s Home Health, Sta-Home Home Health and the Mississippi Association for Home Care charging them with tortious interference with business relations. Mid-Delta asserted that the Association and other defendants, after the chancery court ruling, agreed to act in concert to take a series of steps specifically designed to harm Mid-Delta’s ability to keep employees and maintain patient referrals and for the purpose of interfering with Mid-Delta’s present and prospective business relationships with health care providers, hospitals and patients. Further, Mid-Delta alleged that the Association and other defendants sent letters to health care providers and hospitals in the six counties in which Mid-Delta had authority to provide services discouraging referral of patients to Mid-Delta. Additionally, Mid-Delta asserts that the Defendants mailed to Mid-Delta area offices correspondence detailing the economic losses suffered and to be suffered by Mid-Delta as a result of the chancery court’s ruling. According to Mid-Delta, the purpose of these mailings was to persuade Mid-Delta employees to abandon their employment with Mid-Delta. Consequently, Mid-Delta asserts monetary losses and loss of employees due to the interference of the Association and the other defendants.
¶ 4. Continue Care issued a letter on October 18, 1995, authored by its president, Larry Eifling, describing orders entered by the Hinds County Chancery Court. The Association held a board meeting a week later at which a board member reported on the status of the litigation and there was a discussion about the possibility of sending out a public notice of some type after the chancery court’s order was finalized. While Continue Care was a member of the Association, none of its members were present at the October 1995 Association .board meeting
¶ 5. The second mail-out of which Mid-Delta complains was a letter dated January 29, 1996. It was written by Mid-Delta’s attorney to the Mississippi Supreme Court describing the financial harm to Mid-Delta if it were required to adhere to the chancellor’s judgment. The letter stated:
Although quite serious, the financial burden imposed upon Mid-Delta by the Chancery Court’s injunction is not likely to become unbearable for approximately two months. Accordingly, this matter has not yet reached the emergency stage which would require the expedited consideration of a single Justice. Rather, Mid-Delta believes that sufficient time is available for a full panel to give prompt consideration to the Motion, as ordinarily provided under M.R.A.P. 8(c).
This letter was sent out in unmarked envelopes by Continue Care employees to Mid-Delta branch offices.
¶ 6. The circuit court granted summary judgment to Tri-County and the Association, finding these movants met their initial burden of showing that no triable issues existed. Determining that there were no genuine issues of material fact to support the contention that the Association or Tri-County mailed out any documents, that they conspired with any other defendant to mail out such documents, or that they otherwise participated in or ratified the'sending of such documents, and that Mid-Delta did not come forward with any evidence to show that there was a triable issue of fact on these issues, the trial court concluded that in the absence of such evidence, the Association and Tri-County were entitled to judgment as a matter of law. In addition, the circuit court made an *339 express determination that there was no just reason for delay and directed the entry of a final judgment in favor of the Association and Tri-County.
¶ 7. On appeal, Mid-Delta challenges the circuit court’s decision to grant summary judgment in favor of Tri-County and the Association. Further, Mid-Delta advances on appeal that the entry of final judgment by the circuit court was likewise error.
¶ 8. After the appellate briefing period concluded, Tri-County filed proceedings for bankruptcy. Subsequently, this appeal was stayed pursuant to an ordered entered by this Court. Thereafter, Mid-Delta moved for and was granted a motion to dismiss Tri-County as a party to this appeal.
ANALYSIS
1. Summary judgment
¶ 9. Mid-Delta maintains that summary judgment was improper because it met its burden of showing that there was sufficient evidence on which triable issues existed as to the Association’s participation in the scheme to injure its business. Pointing to the two letters mailed out, Mid-Delta contends that no other conclusion can be reached — the Association and others set out to interfere and injure its business without justification. As to the Association specifically, Mid-Delta charges that members of its Association, Continue Care Home Health and Continue Care Home Health, II admitted to authoring the letters in question. Mid-Delta further argues that its burden to overcome the motion for summary judgment was met by the testimony of Ambler Corrie Hall and an October 24, 1995 meeting of the Association’s Board, the minutes of which read:
Corrie Hall discussed the recent court action in connection with the suit against the Mississippi State Department of Health. Hall stated that the judge had determined that the licenses issued January, 1995 were null and void. The judge had also made a preliminary ruling that Mid-Delta could not accept any additional patients after October 10, 1995. A listing of the agency’s patient census was to be filed with the court, the Department of Health and [the Association] by November 7,1995. Hall further stated that Mid-Delta had filed a motion to reconsider.
There was discussion regarding some type of public notice once the order [regarding the settlement in the chancery court case against Mid-Delta] has been finalized.
ACTION — LITIGATION REPORT
Corrie Hall will meet with counsel to identify an action plan on how to proceed once a final order is issued and what action to take during the appeal.
¶ 10. Mid-Delta maintains that “[t]he Association’s expressed intention to publicize the final judgment and the suspension of that plan after Continue Care actually did [publicize] it entitle a jury to infer that ... the Association ... either expressly or impliedly ratified the sending of the letters by Continue Care.” Among other things, Mid-Delta argues that its evidence of the Association’s involvement in the conspiracy is circumstantial, and the trial court erred in refusing to accept this evidence as showing the Association’s participation in the conspiracy.
¶ 11. This Court employs the often utilized de novo standard of review for summary judgments and decides for itself whether there are no material facts in dispute or triable issues such that the mov-ant is entitled to a judgment as a matter of-law. M.R.C.P. 56; Travis v. Stewart, 680 So.2d 214, 216 (Miss.1996). After viewing evidentiary matters in a light most favor *340 able to the nonm'oving party, this Court can only reverse the decision of the trial court if triable issues of fact exist. Travis, 680 So.2d at 216.
¶ 12. Upon the presentation of the motion for summary judgment, Mid-Delta was required to present the court with specific facts in an affidavit or otherwise, showing that issues exist which necessitate a trial. Drummond v. Buckley, 627 So.2d 264, 267 (Miss.1993). Mid-Delta accuses the Association of tortious interference with business relations. Specifically, it maintains that the Association joined others in intentionally causing Mid-Delta to lose business by forwarding correspondence to Mid-Delta branch offices and Mid-Delta clients in an effort to encourage its employees to leave their employment with Mid-Delta and to influence its clients to discontinue using Mid-Delta services.
¶ 13. The tort of interference with business relations has also been described as interference with prospective advantage, occurring when a wrongdoer unlawfully diverts prospective customers away from one’s business encouraging customers to trade with another. Bailey v. Richards, 236 Miss. 523, 536, 111 So.2d 402, 407 (1959). To succeed on a tortious interference with business relations claim, one must prove that the acts of the defendant were intentional and willful, were calculated to injure the plaintiffs in their lawful business, were done with the unlawful purpose of causing damage and loss, and actual damages and losses resulted from the defendant’s conduct. ACI Chem., Inc. v. Metaplex, Inc., 615 So.2d 1192, 1201 (Miss.1993); Nichols v. Tri-State Brick and Tile, 608 So.2d 324, 328 (Miss.1992). Con•sequently, to meet its burden on the motion for summary judgment, Mid-Delta was compelled to come forward with some evidence of each of these elements.
f 14. The Association’s board meeting of October 1995 occurred a week after Continue Care issued its October 18, 1995 letter. The board meeting included only a discussion about the possibility of sending out a public notice of some type after the chancery court’s order was finalized. Furthermore, no member of Continue Care was present at the October 1995 board meeting and Continue Care President Larry Eifling admitted to having authored and sending out the letters in question. Thus, no evidence exists that the October 18, 1995 letter mailed out by Continue Care was done so on the behalf of any other party except Continue Care.
¶ 15. These facts do not support the position that the Association was aware of and involved in the dissemination of the October 18 letter authored by Continue Care. Critical to Mid-Delta’s claim of interference with business is a showing that the Association participated in the October 1995 letter mailing campaign. Mid-Delta can not do so. In a subsequent board meeting the Association discussed sending out an informational-type letter regarding the decision rendered by the chancery court. Such action by the Association was preempted when in January 1996, Mid-Delta, through its chief executive officer, mailed out a letter to its clients and other health care providers explaining the occurrences and effects of the chancery court case. While the Association maintains that it would have been within its rights to send out such an informational-type letter, the evidence shows that it did not do so because Mid-Delta rendered such plans unnecessary.
¶ 16. Alternatively, Mid-Delta relies on a theory of ratification arguing that the Association approved of the mail outs and that such ratification is sufficient to show its involvement in the scheme to ruin Mid-Delta. There is, however, no evidence to *341 show any actions by the Association effectively ratified the actions of Continue Care. While the Association discussed the possibility of sending out an informational letter, it determined that the need to do so was satisfied by the letter authored and disseminated by Mid-Delta itself. In addition, there is nothing to show what language the Association would have used in such a letter and that its intent would have been to damage Mid-Delta’s business interests.
If 17. Mid-Delta has not shown that the Association had any prior knowledge of the mail out or that there is any evidence that its board members did anything that could be viewed as ratifying Continue Care’s actions. Consequently, we conclude that summary judgment was properly entered as to the Association inasmuch as there is no evidence on the record before us establishing a genuine issue of material fact in dispute regarding the Association’s participation in the Continue Care mail outs. Accordingly, we rule that the circuit court’s entry of summary judgment was proper.
2. Entry of final judgment
¶ 18. Mid-Delta challenges the circuit court’s decision certifying the entry of final judgment under Mississippi Rule of Civil Procedure 54(B). It asserts that the court’s discretion was abused in determining that this case was among those rare instances for which Rule 54(b) was intended. In so arguing, Mid-Delta contends that the entry of final judgment in this case does not preserve the established judicial policy against piecemeal appeals in cases that should be reviewed only as single units. Cox v. Howard, Weil, Labouisse, Friedrichs, Inc., 512 So.2d 897, 900 (Miss.1987). Providing federal law which says: “Where the complaint is dismissed as to one defendant but not others, the court should not, as a general matter, direct the -entry of a final judgment pursuant to Rule 54(b), if the same or closely related issues remain to be litigated against the undismissed defendants,” Hogan v. Consolidated Rail Corp., 961 F.2d 1021, 1025 (2d Cir.1992), Mid-Delta urges that the lower court abused its discretion in granting the Association an entry of final judgment. Rule 54(b) states:
(b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief, is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an expressed determination that there is no just reason for delay and upon an expressed direction for the entry of the judgment. In the absence of such determination and direction, any order or other form of decision, however designated which adjudicates fewer than all of the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
¶ 19. In response to Mid-Delta’s position on the entry of final judgment, the Association argues that the entry of the Rule 54(b) final judgment was entirely appropriate under the rule because there is no dispute that Continue Care mailed out the letters in question and because “this Court can be certain that the Continue Care entities will not raise the issue raised by [the Association] on this appeal — namely, the defense of lack of involvement in mailing out the letters, ... [as] it can not *342 reasonably be said that the issue presented in this appeal and those which may ultimately be litigated and appealed by either Mid-Delta or the Continue Care entities in the remainder of the case are such that they should be brought before this Court as a,‘single unit.’ ”
¶ 20. We are not persuaded that the trial court erred in directing a final judgment as to the Association. As we have determined, there is no evidence showing that the Association has any involvement in Continue Care’s dissemination of the October 18 letter or in the dissemination of the January 26 letter in unmarked envelopes. We agree with the circuit court that there was no just reason for the delay of the entry of the final judgment.
¶ 21. THE JUDGMENT OF THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, MYERS, CHANDLER AND BRANTLEY, JJ„ CONCUR. IRVING, J., NOT PARTICIPATING.