ASSOCIATES FINANCIAL SERVICES OF AMERICA, INC., Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 95–PR–69.

District of Columbia Court of Appeals.

Argued Jan. 16, 1997.

Decided Feb. 27, 1997.

---

David H. Cox, Vienna, VA, with whom Joanna M. Pedas, Washington, DC, was on the brief, for appellant.

Martin B. White, Assistant Corporation Counsel, Washington, DC, with whom Charles F.C. Ruff, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellee.

Before FERREN, TERRY, and KING, Associate Judges.

KING, Associate Judge:

In this certified appeal [1] we are presented with the question whether D.C.Code § 20–1104(c), before it was amended in 1995 ("old § 20–1104(c)"), protects a lender from the claims against an estate, where, in reliance on a title search of the real estate records and without actual or constructive notice of a competing claim, the lender takes an interest in real property from a distributee of the estate, in exchange for a deed of trust which is duly filed with the Recorder of Deeds. We hold that the old § 20–1104(c) protects such lenders and that the trial judge erred in voiding the deed of trust. Accordingly, we reverse and remand.

## I. Facts

Bessie Williams, a widow when she died in May 1987, was a resident of the District of Columbia who received Medicaid assistance during her lifetime from the District of Columbia Department of Human Services ("DHS" or "District"). The principal, if not the sole, asset of value in Mrs. Williams's estate upon her death was a parcel of land, which included her home at 317 V Street, N.E. ("property"). Thomas Ellis, Jr. is her son and sole heir at law. Mrs. Williams's will named her son as an alternative executor of her estate, and also provided that he was to inherit the property.

Mr. Ellis was appointed personal representative of the Williams's estate by the probate

---

1. This matter comes before this court on certified appeal from the Superior Court based on partial summary judgment for the District of Columbia, pursuant to Super. Ct. Civ. R. 54(b) ("the Court may direct the entry of a final judgment as to 1 or more but fewer than all of the claims ... upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment"). We can discern no abuse of discretion on the part of the trial court for having certified this appeal. *See Peoples v. Warfield & Sanford, Inc.,* 660 A.2d 397 (D.C. 1995).

division of the Superior Court. He initiated probate on October 13, 1987, the will was admitted to probate on November 3, 1987, and letters of administration were issued to him. Ellis published notices to creditors and unknown heirs on November 13, 20, and 27, 1987, including notice of the May 13, 1988 deadline for filing claims against the estate.

On January 11, 1988, DHS filed a timely claim against the estate in the amount of $36,549.27 for medical services provided to Mrs. Williams through the District's Medicaid program. DHS recorded this claim, which is not disputed, in the probate records for the estate. On September 29, 1988, Ellis, acting in his capacity as personal representative of the estate, deeded the property to himself in accordance with the terms of his mother's will. The deed was recorded with the Recorder of Deeds, the language of recordation stating that Ellis received title to the property from himself as the personal representative of the Williams's estate. On October 4, 1988, the Register of Wills granted the estate a Waiver of Filing Inventories and Accounts.

On July 26, 1989, Mr. Ellis and his wife borrowed $49,000 from Better Homes Financial Services in return for a deed of trust to the property. The loan was later assigned to Chrysler First Financial Services. On April 27, 1990, the Ellises borrowed $75,000 from appellant, Associates Financial Services of America, Inc. ("Associates"), to pay off the Chrysler First loan and to cover additional expenses. This second loan was secured by a deed of trust to the property in favor of Associates. Associates filed its deed of trust with the Recorder of Deeds on May 1, 1990. As part of Ellis's loan application process, Associates had the property appraised and a title search conducted, which apparently revealed no other interest or claims on the property.

On October 10, 1991, three years after Ellis recorded the transfer of title to himself, and seventeen months after Associates filed its deed of trust with the Recorder of Deeds, the District recorded its Medicaid claim, as a lien on the property, with the Recorder of Deeds. On October 15, 1991, the District filed the instant action against the Ellises and Associates in the Superior Court. The relief sought was the return of the property to the estate so that it could be sold and the proceeds used to pay the District's Medicaid claim.[2]

On January 16, 1992, the Ellises filed for bankruptcy in the U.S. Bankruptcy Court for the District of Maryland. The Ellises' bankruptcy plan proposed surrendering the property to Associates. The Bankruptcy Court determined that the property was abandoned by the Ellises in favor of Associates, but declined to resolve the conflicting claims to the property between Associates and the District. Thereafter, the Bankruptcy Court lifted the bankruptcy stay on the property, leaving the matter in the jurisdiction of the Superior Court for resolution of the conflicting claims.

## II. Proceedings in Superior Court

On March 12, 1993, after a hearing on the parties' respective motion and cross-motion for summary judgment, Judge Eugene N. Hamilton granted partial summary judgment in favor of the District, restoring the property to the estate by voiding both Ellis's transfer of the property to himself and the subsequent deed of trust in favor of Associates.[3] This action would allow the District to receive payment of its Medicaid claim from the estate.

In granting summary judgment for the District, Judge Hamilton made a series of rulings. First, he held that D.C.Code § 20–

---

2. The complaint set forth five separate counts seeking relief as follows: Count I: Removal of Ellis as personal representative; II: Fraud committed by defendants in transfer of property; III: Negligence committed by defendants in transfer of property; IV: Restoration of property to the estate; V: Payment of the District's claim for $36,549.27.

3. The trial court granted summary judgment to the District on counts four and five. Because Ellis has been replaced as personal representative, the first count was moot; the remaining two counts, for fraud and negligence, were stayed pending resolution of this appeal. See note 2, *supra*.

1102[4] imposed on Ellis, in his capacity as personal representative of his mother's estate, a duty to notify the District, through a proposal for estate distribution, regarding his intent to transfer the property to himself. Had he done so, reasoned the court, the District would have been put on notice of the pending transfer, thus providing it an opportunity to object to the removal of the property from the estate—a removal that prevented the District from collecting its $36,549.27 claim. Judge Hamilton also ruled that, because he transferred the property to himself without a court order, Ellis violated D.C.Code § 20–742,[5] thus rendering the transfer unlawful and void. Therefore, because he could not legally pass title to himself, Ellis could not pass legal title to anyone else, including Associates.

The court further ruled that Associates had "an obligation to make reasonable inquiry as to whether or not a person who purports to sell legal title to property has the authority to do so." Judge Hamilton concluded that a person using due care should have investigated the fact that Ellis, as personal representative of the estate, had passed title to himself. Thus, the judge ruled, Associates was obliged to examine the estate administration file where, presumably, it would have discovered: 1) that the District had a Medicaid claim against the estate; 2) that Ellis had failed to notify the District that he had transferred the property to himself; 3) that the probate court did not authorize the transfer; and 4) that Ellis was therefore without authority to transfer title to himself or to any other party. In sum, Judge Hamilton's rulings nullified Ellis's transfer of title to himself, voided the deed of trust in favor of Associates, and restored the property to the estate for sale by the successor personal representative, with the proceeds available to satisfy the District's Medicaid claim.[6] This appeal followed.

Associates contends here that it has priority on the property because it was first to file its deed of trust with the Recorder of Deeds, and is therefore "first in time, first in right"; that it took the deed of trust without notice of the District's Medicaid claim against the estate; that old § 20–1104(c) protects a lender who takes an interest in realty, without notice of a competing claim, from any claims against the estate; and that the District's claim is against Ellis personally, either because the property had already been transferred from the estate at the time the District filed its lien with the Recorder of Deeds, or because Ellis breached his fiduciary duty as personal representative.

### III. Standard of Review

■ The trial court should grant summary judgment if "there is no genuine issue as to any material fact and [where] the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c); *see R & A, Inc. v. Kozy Korner, Inc.,* 672 A.2d 1062, 1070 (D.C.1996). "On appeal from the trial court's entry of summary judgment, this court conducts a *de novo* review of the record and applies the same principles employed by the trial court in initially considering the motion." *Simard v. Resolution Trust Corp.,* 639 A.2d 540, 549 (D.C.1994) (citing *Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983)).

We conclude for the reasons set forth below that, pursuant to old § 20–1104(c), Associates took good title to the property in question, free of any claim against the estate, and that the trial court erred as a matter of law when it ordered that the property be re-

---

**4.** "After the probable claims against the estate are known, the personal representative may mail or deliver a proposal for distribution to all persons who have a right to object to the proposed distribution...." D.C.Code § 20–1102(d) (1989 Repl.).

**5.** The relevant statute reads: "(a) A personal representative may at any time petition the Court for permission to act in any matter relating to the administration of the estate. (b) In order to invest in, sell, exchange, or lease real property, the personal representative shall obtain a Court order...." D.C.Code § 20–742 (1989 Repl.).

**6.** Because he voided Ellis's transfer of the property to himself and Ellis's later transfer of the property to Associates, Judge Hamilton did not reach the question, which we decide today, whether Associates had a priority claim on the property pursuant to old § 20–1104(c).

turned to the estate.[7]

## IV. D.C.Code § 20–1104(c)

Section 20–1104 (c) of the District's probate code was amended in 1995. However, the operative language under old § 20–1104(c) determines the outcome of this appeal because Associates filed its deed of trust on the property with the Recorder of Deeds on May 1, 1990, before the amendment became effective. The previous version provided:

> If property distributed in kind is sold to a *purchaser* for value by a distributee who has received an instrument or deed of distribution from the personal representative, the *purchaser* takes good title free of any claims of the estate and incurs no personal liability to the estate. To be protected under this provision, a *purchaser* need not inquire whether a personal representative acted properly in making the distribution in kind.

D.C.Code § 20–1104(c) (1989 Repl.) (emphasis added). The meaning of this provision as applied here is both plain and undisputed: a "purchaser" of the property from Ellis (a distributee), by taking, in the language of old § 20–1104(c), "good title free of any claims of the estate," would be free of any obligation with respect to the District's claim. Associates contends that, although this provision does not explicitly specify that a lender is a "purchaser," the word nonetheless includes lenders because lenders, like purchasers,

take an interest in the property in return for valuable consideration. In support of this argument, Associates relies, in part, upon the amended version § 20–1104(c),[8] asserting that the statute as amended, rather than now including a previously excluded class from protection, only makes explicit what was implicit under the previous version of the statute: that lenders who take an interest in real property in exchange for value and without notice of an outstanding claim should be treated the same as bona fide purchasers and not be required to inquire into the authority of a personal representative who transfers real property to a distributee. Because we find support for this contention in our caselaw, we agree.

In *Osin v. Johnson,* 100 U.S.App. D.C. 230, 243 F.2d 653 (1957), a case binding on us pursuant to *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971), the circuit court was called upon to decide whether an unrecorded constructive trust would take priority over a later recorded deed of trust on real property, where the holder of the deed of trust, relying on the real estate recording system, took its interest in the property without actual or constructive notice of any other claim to the property including the interest of the beneficiary of the constructive trust. The court first observed:

> The record demonstrates, and the lower court so found, that the *holders of the deed of trust* were innocent *purchasers* for value

---

7. Because we resolve the appeal on this ground, we need not consider the trial court's rulings with regard to the validity of the transfer of the property from the estate to Ellis personally, or the nature of the duty, if any, of Ellis to inform the District of the transfer.

8. The Council amended the probate code in 1994 in an attempt, *inter alia,* to reduce the monetary and time costs involved with probate and estate administration in the District of Columbia. As one of several amended sections, the revised § 20–1104(c) reads:

> If property distributed in kind or a security interest therein is acquired for value by a purchaser from, *or lender to,* a distributee who has received an instrument or deed of distribution from the personal representative, or is so acquired by a purchaser from, *or lender to,* a transferee from such distributee, the purchaser *or lender* takes good title free of any claims or rights of any interested person in the estate

and incurs no personal liability to the estate, or to any interested person, whether or not the distribution was proper or supported by court order or the authority of the personal representative was terminated before execution of the instrument or deed. This section protects a purchaser from, *or lender to,* a distributee (or a distributee's transferee) even when the distributee, who, as personal representative, has executed such a deed of distribution. To be protected under this provision, a purchaser *or lender* need not inquire whether a personal representative acted properly in making the distribution in kind, even if the personal representative and the distributee are the same person, or whether the authority of the personal representative had terminated before the distribution....

D.C.Code § 20–1104(c) (1996 Supp.) (emphasis added).

without notice of [the constructive trust beneficiary's] prior equity, and thus they clearly fall within the purview of the recording act [9] . . . protecting bona fide *purchasers* against unrecorded conveyances.

100 U.S.App. D.C. at 233, 243 F.2d at 656 (emphasis added). The court then held that the deed of trust holder, as a bona fide purchaser, had an interest superior to the beneficiary of the constructive trust. Although the recording statute in question, by its terms, gave priority to both bona fide purchasers and mortgagees, the court held that even without the recording statute a holder of a deed of trust was a purchaser for value with priority of title:

> Even in the absence of recording acts, or . . . if the recording statute is inapplicable, *a bona fide purchaser's* rights have always been held superior to prior equitable interests. A *purchaser for value*, without notice of the facts which lead to the creation of a constructive trust, will cut off the trust beneficiary's rights. Restatement, Restitution, § 172 (1937); 4 Scott, Trusts § 468 (2d ed.1956). Therefore, the *holders of the deeds of trust* would prevail. . . .

*Id.* at 234, 243 F.2d at 657 (emphasis added). Thus, the *Osin* court, forty years ago, unequivocally regarded deed of trust holders to be on the same legal footing as bona fide purchasers in matters involving title to real property.

**9.** D.C.Code § 45–501 (1951).

**10.** The determinative issue for the *Clay* court was to decide whether the Washington Post, the purchaser of an office building, or Clay, the owner of a master lease for the same property, had a priority interest on the property in question. Prior to its purchase of the property, the Washington Post had subleased space in the building from Clay, a lessor of two floors in the building. Clay occupied space in the building as well, a factor known by the Washington Post at the time it purchased the property. But Clay also had a master lease on the building which it had not filed with the recorder of deeds. It was this master lease which served as the basis for Clay's priority claim on the property. The trial court found that the Washington Post had relied on its title search of the real estate records, conducted before its purchase, and that it had no actual or constructive notice of Clay's master lease. The trial court held that the Washington Post had priority on the property because it was a bona fide purchaser for value without notice of Clay's

More recently, in *Clay Properties, Inc. v. Washington Post Co.,* 604 A.2d 890 (D.C.1992) (en banc),[10] we said that "[a] bona fide purchaser is one who acquires an interest in property for a valuable consideration and without notice of any outstanding claims which are held against the property by third parties." *Id.* at 894 (citation omitted). A key issue faced by the court in *Clay* was whether a party who takes an interest in real estate, after a title search of the real estate recordation system reveals no prior claim on the property, can rely on that search in order to protect its interests against future claims, and if so, under what circumstances. The *Clay* court resolved this issue by first observing that a party must acquire an "interest in property for a valuable consideration" and that the party must acquire this interest "without notice"[11] of an outstanding claim. *Id.* Thus the operative words used in determining whether a party is protected by the recordation system is not whether the party is described as a "purchaser" or a "lender." Rather, the determinative factors are whether a party takes an interest in the property in exchange for value and without notice of an outstanding claim. The notice requirement is actual or constructive; inquiry notice is limited only to those cases where the *Clay* factors are operative.

With these principles in mind, we now turn to the question before us: is a "lender" who

interest, and granted the Washington Post's motion for summary judgment. The en banc court reversed the trial court, holding that, for purposes of summary judgment and because the Washington Post knew that Clay occupied space in the building and was the lessor of two floors in the building, the Washington Post's reliance on its title search was inadequate. The en banc court ruled that, under the circumstances, the Washington Post had a duty to inquire whether Clay had a competing claim on the property. Having breached this duty to inquire, the court held that the Washington Post was not a bona fide purchaser for value, and, therefore, that it did not have a priority claim on the property.

**11.** "Notice, however, may be actual, constructive, or inquiry. . . . [A party] is held to be on inquiry notice where [it] is aware of circumstances which generate enough uncertainty about the state of title that a person of ordinary prudence would inquire further about those circumstances." *Clay, supra,* 604 A.2d at 895.

has received a deed of trust as security for a loan a "purchaser" with the protection afforded by old § 20–1104(c)?

 While the term "lender" is not specifically mentioned in the earlier version of the statute, an interpretation of the word "purchaser" that does not include lenders would be contrary to the purpose of the real estate recording system which is designed to protect those who obtain an interest in property in exchange for valuable consideration. A lender meets these standards and, as both *Osin* and *Clay* make clear, a lender, like a purchaser, is entitled to the protection accorded by the applicable statutes. For these reasons, we hold that a "lender" who takes an interest in real property for value from a distributee with title and without notice of a competing claim is protected under old § 20–1104(c).

 Applying this holding to the case before us, we conclude that Associates, as a lender who exchanged a sum of money in the form of a loan (value) for a deed of trust (interest) in the Ellises' property without notice of a competing claim (by virtue of its title search of the real estate records that revealed no adverse claim),[12] is protected by the provisions of old § 20–1104(c). By the terms of the statute, Associates took "good title free of any claim of the estate." Therefore, Associates has no obligation to satisfy any debt that the estate might owe to the District.

### V. Conclusion

For the reasons stated, we hold that, pursuant to old § 20–1104(c), the trial court erred as a matter of law when it voided the deed of trust on the property in favor of Associates. Therefore, the order granting summary judgment for the District is reversed, and the case is remanded for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

12. The *Clay* factors imposing a duty of inquiry

notice are inapplicable under the facts here.